**STATE of Tennessee, Appellee,**

v.

**Reed VASSER, Jr., Appellant.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

Aug. 19, 1993.

James C. McSween, III, Fred L. Myers,
Jr., Newport, for appellant.

Charles W. Burson, Atty. Gen. of Tennessee, and Jeannie Kaess, Asst. Atty. Gen. of Tennessee, Nashville, Alfred C. Schmutzer, Jr., Dist. Atty. Gen., Sevierville, James L. Gass, Asst. Dist. Atty. Gen., Newport, for appellee.

### OPINION

TIPTON, Judge.

The defendant, Reed Vasser, Jr., appeals as of right from his conviction for driving under the influence of an intoxicant (DUI) and sentence imposed by the Jefferson County Circuit Court. He received the minimum sentence allowed by law, including forty-eight hours in jail and a two hundred fifty dollar fine. He contends (1) that the evidence was insufficient to show that he was driving a motor vehicle as defined by T.C.A. § 55–1–103(d), (2) that the trial court should not have found him guilty beyond a reasonable doubt solely upon the police officer's testimony, and (3) that the trial court erred in denying him judicial diversion after he served forty-eight hours in jail. We hold that the evidence was sufficient and that the trial court properly refused to grant the defendant judicial diversion.

Wesley Ballew, a Jefferson County Sheriff's Deputy, testified that on June 30, 1991, he saw a van travelling down a road at a high rate of speed and weaving from side to side. He turned on his blue lights and signaled for the van to pull over. The van sped away and ultimately turned into a driveway. Deputy Ballew stated that the defendant got out and staggered back to the patrol car.

Deputy Ballew testified that he smelled a strong odor of an alcoholic beverage on the defendant. He said he asked the defendant to perform a field sobriety test and that after attempting the test, the man admitted that he was too drunk to complete the test, telling Deputy Ballew to take him to jail. He stated that the defendant then laid on the ground and started hollering and complaining about his back. An ambulance was called and the defendant was taken to a hospital. Subse-

quently, the defendant was taken to jail. He refused to take a breath test.

The defendant testified that he was driving a three-quarter ton van toward his house when he realized that he was being followed by a patrol car with lights flashing. He said he pulled into his driveway and walked back toward the patrol car as the deputy walked forward to meet him. The deputy accused him of not stopping, accused him of being intoxicated and arrested him for DUI and failure to yield to the patrol car's flashing lights. The defendant denied having anything to drink. He said that the deputy did not ask him to take a field sobriety test and he denied telling the deputy he was too drunk to take the test.

The defendant testified that the deputy handcuffed him, but the handcuffs hurt his wrists. He said he fell out of the patrol car onto the ground. He said he told the deputy that he was in pain and asked the deputy to call an ambulance. The defendant stated that he got into the ambulance, but he said he did not remember anything else. He said when he woke up, he was in the hospital. The defendant said that he was confused and he did not remember a nurse taking a blood sample from him. The trial court found the defendant guilty of DUI.

The defendant contends that the state failed to prove that the defendant was driving the type of vehicle which would bring into play the DUI statutes. He relies upon T.C.A. § 55–1–103(d) which defines motor vehicle to mean "every vehicle which is self-propelled, excluding motorized bicycles and every vehicle which is not propelled by electric power obtained from overhead trolley wires." Basing his contention upon a grammatical reading of the statute, the defendant contends that every vehicle which is not propelled by electric power obtained from overhead trolley wires is excluded from the definition of motor vehicle. However, we need not seek to determine the legislative intent for this apparently inartfully drawn provision, although we can presume that the legislature did not intend the absurdity resulting from the defendant's interpretation. *See, e.g., State v. Harrison,* 692 S.W.2d 29, 31 (Tenn.Crim.App.1985).

■ T.C.A. § 55–10–401(a) prohibits driving "any automobile or other motor driven vehicle" while under the influence of any intoxicant. The evidence submitted by the defendant reflects that he was driving a four-wheel, Ford utility van. The defendant does not contend that he was not driving a motor driven vehicle as expressly provided by the above statute. Also, the definition of motor vehicle upon which the defendant relies applies to chapters one through six of Title 55 and not chapter ten, in which the DUI statutes appear. *See* T.C.A. § 55–1–102 (the meanings provided in chapter one are for the purpose of chapters one through six of Title 55). The DUI statutes cover the defendant's driving of the van.

■ As to the trial court's reliance upon Deputy Ballew's testimony, the defendant simply argues that the state should be required to prove its case by more than the deputy's testimony. Clearly no such requirement exists in the law. There is no merit to this issue.

Finally, the defendant contends that he was entitled to judicial diversion after serving forty-eight hours in jail as required by law. The trial court stated that the defendant was an excellent candidate for a "deferral of prosecution" pursuant to T.C.A. § 40–35–313, but ruled that it had no authority to grant the relief requested. T.C.A. § 40–35–313, commonly called the judicial diversion statute, provides in part as follows:

> (a)(1) If any person who has not previously been convicted of a felony or a Class A misdemeanor is found guilty or pleads guilty to a misdemeanor which is punishable by imprisonment or a Class C, D or E felony, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place him on probation upon such reasonable conditions as it may require and for a period of time not less than the period of the maximum sentence for the misdemeanor with which he is charged, or not more than the period of the maximum sentence of the felony with which he is charged....

In pertinent part, the remaining provisions of T.C.A. § 40–35–313 entitle a defendant who

successfully complies with the conditions of probation to a dismissal of the charge and proceedings against him and to expungement of all public, official records relating to the case.

It is readily apparent that T.C.A. § 40–35–313 contains no exception to its application to all misdemeanors, including DUI. The state defends the trial court's ruling by referring to the Sentencing Commission Comments to T.C.A. § 40–35–313, which at the time of the offense, stated that the statute applied to "all misdemeanors except for convictions for driving under the influence," citing T.C.A. § 55–10–403(b)(1). Initially, we note that the Sentencing Commission Comments were not enacted by the legislature and they do not have the force of law. Obviously, a commission charged with the responsibility of drafting legislation may, through its comments, greatly assist in understanding the purpose and the meaning of proposed legislation and if the legislature was provided such comments in its consideration of the proposed legislation, the comments could lend weight in determining legislative intent. *See, e.g., Minichiello v. Royal Business Funds Corp.,* 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793 (N.Y.1966), *cert. denied,* 389 U.S. 820, 88 S.Ct. 41, 19 L.Ed.2d 72 (1967). However, aside from the fact that it is not clear that the comments to T.C.A. § 40–35–313 were provided to the legislature, the comments should not be used to circumvent the plain meaning of the statutory language. Therefore, given the all inclusive language of T.C.A. § 40–35–313, the resolution of the issue of its application to DUI cases involves reviewing it in conjunction with the DUI law.

■ The DUI penalty provision enacted as T.C.A. § 55–10–403(b)(1) (Supp.1992) provides:

No person charged with violating the provisions of §§ 55–10–401—55–10–404 [DUI] shall be eligible for suspension of prosecution and dismissal of charges pursuant to the provisions of §§ 40–15–102—40–15–105 [pretrial diversion] and 40–32–101(a)(3)—(c)(3) [destruction of criminal records] or for any other pretrial diversion program nor shall any person convicted under such sections be eligible for suspen-

sion of sentence or probation pursuant to § 40–21–101 [repealed probation provision] or any other provision of law authorizing suspension of sentence or probation until such time as such person has fully served day for day at least the minimum sentence provided by law.

(bracketed explanation added). This means that the defendant was not eligible for pretrial diversion and upon conviction for his first DUI offense was not eligible to have the minimum sentence of forty-eight hours in jail suspended. Also, he was not eligible for probation for that minimum sentence.

The issue in this case is ultimately resolved by a determination of whether or not T.C.A. § 55–10–403(b)(1) prohibits the application of T.C.A. § 40–35–313 in DUI cases. We conclude that it does based upon our interpretation of the DUI penalty provision's requirement that a "convicted" person must serve the minimum "sentence," and our determination that the trial court's withholding of a judgment of guilt under judicial diversion would prohibit imposition of any DUI sentence and prevent the application of both statutes in the fashion suggested by the defendant.

In a general sense, a "conviction" has been defined as "the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged." *Black's Law Dictionary* 333 (6th ed. 1990). In one sense, it is viewed as necessarily including the judgment on the finding of guilt or verdict. In *McClain v. State,* 186 Tenn. 401, 210 S.W.2d 680, 681 (1948), the Court stated that absent "a minute entry showing that the Trial Judge approved the verdict ... and sentenced the Defendant, the conviction of guilt is incomplete." *Accord Ray v. State,* 576 S.W.2d 598, 602 (Tenn.Crim.App.1978); *Spencer v. State,* 125 Tenn. 64, 69–70, 140 S.W. 597, 598–599 (1911) (technically, "a conviction involves, not only a verdict, but also a sentence passed by the court"). In fact, this has been called the "technical" meaning of "conviction." *Vasquez v. Courtney,* 272 Or. 477, 537 P.2d 536, 537 (1975).

Actually, the technical meaning is used in terms of requiring a "judgment of conviction." *See* Tenn.R.Crim.P. 32(e) ("judgment

of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence"). In this sense, the judgment provides the legal authority for the executive branch of government to incarcerate a person who is sentenced to confinement. *See* T.C.A. §§ 40–20–101, 40–23–101. Also, the technical meaning is normally used, absent statutory definition to the contrary, when referring to the indirect or subsequent consequences which might result, such as, future civil disabilities. *See Vasquez v. Courtney,* 537 P.2d at 537–538 and cases cited therein.

If the technical meaning were applied to the legislature's reference to a "convicted" person in the DUI statute, a strong and, perhaps, conclusive argument could be made that the statute does not preclude a defendant from obtaining judicial diversion totally, without serving any time in jail. The reason is that the judicial diversion statute precludes the entry of a judgment of guilt. Thus, a trial court could decide that a defendant merited diversion and, by refusing to enter a judgment of guilt, prevent the defendant from even reaching the status of a "convicted" person which would be necessary to bring the DUI statutory prohibitions into play.

However, a further review of the authorities shows that what is meant by "conviction" actually depends upon the context in which it is being used. *See* 21A Am.Jur.2d *Criminal Law* § 1023 (1981). In *State ex rel. Barnes v. Garrett,* 135 Tenn. 617, 188 S.W. 58 (1916), the petitioner sought habeas corpus relief from the trial court's continued requirement that he serve a sentence even though he had been granted a pardon by the governor during the course of his direct appeal of his conviction for carrying a pistol. Under Article III, Section 6 of the Constitution of Tennessee, the governor is empowered to grant pardons "after conviction." The state argued that because the petitioner's direct appeal suspended the judgment entered by the trial court against him, he did not stand convicted and, thus, there was no "conviction" upon which a pardon might operate.

In concluding that the state constitution's use of the word "conviction" did not include nor imply the imposition of a judgment or sentence, our Supreme court relied upon evidence that the framers of our constitution understood the word "conviction" to relate only to the verdict as shown by Article I, Section 5 of the constitution:

> *Elections to be free and equal—Right of suffrage.*—The elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon *conviction by a jury* of some infamous crime, previously ascertained and declared by law, and *judgment thereon by court of competent jurisdiction.*

(emphasis added). Thus, for the purposes of the validity of a pardon, the Court held that although an appeal suspended the judgment, it did not affect the verdict and the petitioner stood convicted unless a new trial were awarded. 188 S.W. at 60.

Also, in analyzing how the word "conviction" is used, the Supreme Court noted that the word "does not ordinarily include nor imply judgment or sentence, but has a meaning entirely separate and apart from judgment or sentence" in Tennessee statutes. *Id.* Some of the statutory examples given by the Court are similar to presently existing statutes. *See e.g.,* T.C.A. § 40–20–111 (regarding concurrent or cumulative sentences, providing that if "any person has been convicted of two (2) or more offenses, judgment shall be rendered on each conviction after the first …"); T.C.A. § 40–20–112 ("Upon conviction for any felony, it shall be the judgment of the court that the defendant be infamous …"); T.C.A. § 40–20–116(a) ("Whenever a felon is convicted of stealing or feloniously taking or receiving property, or defrauding another thereof, the jury shall ascertain the value of such property …").

Without further detailing the many illustrations existing in our criminal statutes, we note that the legislature often uses the word "conviction" to denote a stage of the process occurring in the trial court after which such further action by the trial court must be taken or may be authorized. In this context, "when the word 'conviction' is used in connection with the successive steps in a criminal case, the reference is to the verdict." 21A Am.Jur.2d *Criminal Law* § 1024 at 569;

*see State v. Morrill,* 105 Me. 207, 73 A. 1091, 1092 (1909); *People v. Fabian,* 192 N.Y. 443, 85 N.E. 672, 675 (N.Y.1908). In this respect, from the language used in T.C.A. § 55–10–403(b)(1), we derive no indication that the legislature intended anything more than the finding of guilt stage of the case by referring to a "convicted" person. In fact, in referring to mandatory sentencing requirements for such a "convicted" person, it is obvious that the legislature was referring to a successive step of the case.[1] Therefore, we conclude that the legislature intended to prohibit probation or suspension of a sentence for any person found guilty of DUI. Likewise, such person must serve the minimum sentence provided by law.

In mandating a minimum "sentence" upon a person's conviction for DUI, the legislature effectively removed judicial diversion from the alternatives available to a trial court in DUI cases. A sentence is a "judgment formally announced by the court or judge upon the defendant after his conviction in a criminal prosecution...." *Black's Law Dictionary* 1362 (6th ed. 1990). It is often viewed to be synonymous with a "judgment" of conviction and its pronouncement is considered to be the court's judgment. 79 C.J.S. *Sentence* (1952) at 1042; 21 Am.Jur.2d *Criminal Law* § 525 (1981) at 869. Also, as previously indicated, the authority to enforce the legislative mandate that a minimum sentence be served must flow from the court's entry of a judgment which imposes the sentence.

However, judicial diversion necessarily precludes the entry of a judgment of guilty and requires imposition of probation. Thus, by its terms, T.C.A. § 40–35–313 precludes the imposition of a sentence of confinement which could be enforced so as to comply with the mandates of the DUI law. The DUI statute and the judicial diversion statute cannot be applied in conjunction with each other. With such a conflict, the DUI statute, being specific in its application, works an exception to the general judicial diversion law. *See Cole v. State,* 539 S.W.2d 46, 49 (Tenn.Crim. App.1976); *Watts v. Putnam County,* 525 S.W.2d 488, 492 (Tenn.1975).

Upon the defendant's jury conviction for first offense DUI, the trial court was obligated to impose and the defendant was obligated to serve the minimum sentence in jail. To comply with the statute, the trial court was required to impose its judgment upon the verdict of guilt, if it approved of that verdict, and it could not withhold entry of the judgment as otherwise provided by the judicial diversion statute. Therefore, the trial court did not err in determining that it was without authority to grant the defendant judicial diversion. The judgment is affirmed.

SCOTT, P.J., and WHITE, J., concur.

---

1. We note that another portion of the DUI penalty statute relates to enhanced penalties based upon prior convictions. *See, e.g.,* T.C.A. § 55–10–403(a) and (c)(2). We need not attempt to determine what the legislature intended in these subsections.