# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 6, 2007

## STATE OF TENNESSEE v. EDGAR WHITE, JR.

**Appeal from the Circuit Court for Dyer County**
**No. C05-438    Lee Moore, Judge**

---

### No. W2006-00655-CCA-R3-CD - Filed March 20, 2007

---

The defendant, Edgar White, Jr., was convicted of driving under the influence (first offense) (DUI) and simple possession of marijuana, both Class A misdemeanors, and was sentenced to eleven months, twenty-nine days in jail for each, suspended to thirty days, to be served concurrently.  On appeal, the defendant challenges both the sufficiency of the evidence that formed the basis of his convictions and the length of his sentence.  We conclude that the evidence was sufficient to sustain both convictions, and we affirm the convictions.  We also affirm the sentence imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

James E. Lanier, District Public Defender; Patrick R. McGill, Assistant District Public Defender, for the appellant, Edgar White, Jr.[1]

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; C. Phillip Bivens, District Attorney General; Lance E. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At trial, Sergeant John Cannon of the Dyer Count Sheriff's Department testified that on July 2, 2005, he noticed a vehicle leaving the parking lot of Pearl's, a Dyersburg bar.  Sgt. Cannon observed the driver was not wearing his seatbelt, so Sgt. Cannon stopped the vehicle.  Sgt. Cannon noted that the driver, whom he identified as the defendant, had difficulty producing his driver's

---

[1]Although the record indicates that the defendant's full name appears to be James Edgar White, Jr., this opinion will refer to the defendant as he was named in the indictment which initiated this case.

license. Sgt. Cannon testified that the defendant had a bottle between the seats of his vehicle. The defendant initially told Sgt. Cannon that the bottle was an antique, but upon further questioning, the driver admitted the bottle contained homemade wine. Sgt. Cannon noted the smell of alcohol emanating from the vehicle, and he also testified that the defendant's speech was slurred and his eyes were bloodshot. According to Sgt. Cannon, the defendant stated that he had consumed two beers during the evening.

Sgt. Cannon testified that he asked the defendant to perform field sobriety tests. The defendant said that he had knee problems which would affect his ability to perform some tests, so Sgt. Cannon did not have the defendant conduct the "heel to toe" walking test. Sgt. Cannon first had the defendant perform a test that involved counting on his fingers from one to four, then backwards from four to one. According to Sgt. Cannon, the defendant failed this test. Sgt. Cannon then had the defendant attempt the "finger to nose" test, but the defendant could not touch his nose, which constituted a failure of the test. Sgt. Cannon then had the defendant walk from the officer to the defendant's vehicle and back again. Sgt. Cannon testified that the defendant stumbled into the roadway on his first attempt but did better on the second attempt. Nevertheless, Sgt. Cannon arrested the defendant on suspicion of driving under the influence.

Incident to the arrest, Sgt. Cannon searched the defendant's vehicle. Sgt. Cannon noted the presence of a partially-smoked cigarette. Sgt. Cannon's initial impression was that the cigarette was a hand-rolled tobacco cigarette, but after visually inspecting the cigarette, he testified that based on his experience as a police officer, he believed the cigarette instead contained marijuana.[2] Sgt. Cannon testified that the defendant became verbally abusive toward him as he transported the defendant to the sheriff's office. At the sheriff's office, the defendant refused to submit to a breathalyzer test. Sgt. Cannon then transported the defendant to the county jail.

On cross-examination, Sgt. Cannon admitted that he did not notice the defendant driving erratically before he stopped the defendant. Sgt. Cannon stated that it may have taken the defendant twenty seconds to pull out his license, instead of the forty-five minutes he had claimed on direct examination. He also noted that some of the defendant's actions could have resulted from his being nervous over being investigated for DUI. Sgt. Cannon stated that the defendant appeared "clubfooted" and that the defendant had told him that he (the defendant) had recently undergone open heart surgery, which could have affected his balance. Sgt. Cannon also admitted that the defendant stated that he had no idea how the cigarette ended up in his vehicle. Sgt. Cannon acknowledged that while the defendant was verbally abusive, the defendant never tried to initiate a physical altercation.

Jerry Hinson, a correctional officer at the Dyer County Jail, testified that he spent approximately an hour and fifteen minutes with the defendant the night he was arrested. Hinson stated that when the defendant arrived at the jail, he appeared a little unsteady on his feet and had

---

[2]There is no indication on the record, however, that the officer chemically tested the substance in the field or sent the substance to a crime lab for additional testing.

slightly slurred speech. Hinson noted that the defendant was agitated when he first arrived at the jail, but he ultimately calmed down. Hinson also smelled an odor of alcohol coming from the defendant, and in Hinson's opinion, the defendant was intoxicated that evening. On cross-examination, Hinson noted that the defendant's anger was what, in part, led Hinson to believe that the defendant was intoxicated.

The defendant's first witness, George McKee, testified that he saw the defendant at another Dyersburg establishment, the Old Hickory House, the night of the defendant's arrest. McKee testified that he only saw the defendant drink coffee while McKee was at the Old Hickory House, from around 8:00 p.m. to 9:30 p.m., but that the defendant was still at the bar when McKee left. Brian White, the defendant's son, testified that he bonded the defendant out of jail the night of the defendant's arrest. Brian White testified that his father was upset when he arrived at the jail. He also stated that the defendant was required to take medications that made the defendant light-headed. The defendant's son testified that the defendant appeared nervous but was not intoxicated, did not have slurred speech, and did not smell of alcohol.

Jerry Pritchett testified that he was at Pearl's the night the defendant was arrested and saw the defendant there. Pritchett testified that he did not see the defendant drink alcohol during their time there, but he only saw the defendant periodically. Pritchett stated that he did not know the exact time the defendant arrived at the bar. Pritchett testified that when the defendant left Pearl's, the defendant told Pritchett that he (the defendant) was glad that he had not been drinking because he had heard there were DUI roadblocks that evening. The defendant did not testify in his own defense.

<u>SUFFICIENCY OF EVIDENCE</u>

*Standard of Review*

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

*DUI Conviction*

The defendant was convicted of driving under the influence in violation Tennessee Code

Annotated Section 55-10-401. The statute states, in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> > (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system;
> > . . . .

Tenn. Code Ann. § 55-10-401(a)(1) (2004).

The defendant claims that the evidence produced at trial is insufficient to convict the defendant of a DUI charge. The defendant contends that testimony of the defense witnesses and the video tape from the officer's in-dash camera "should convince this Court that there was insufficient evidence to convict the defendant of DUI." We disagree. First, we note that the video tape is not in the record on appeal. Also, this court has held that in DUI cases, a police officer's testimony, by itself, is sufficient evidence to convict a defendant of driving under the influence. State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993). In this case, the arresting officer testified that the defendant smelled of alcohol, slurred his speech, had bloodshot eyes, and failed three field sobriety tests. The officer at the county jail testified that the defendant was unsteady on his feet, had slurred speech, and smelled of alcohol. The testimony of the two officers was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of driving under the influence.

*Possession of Marijuana Conviction*

The defendant was also convicted of simple possession of a controlled substance, a violation of section 39-17-418 of the Tennessee Code Annotated. The evidence relating to the defendant's marijuana possession consisted solely of the arresting officer's visual examination of the substance at the arrest site. The officer testified that through his work experience, he was familiar with the look and smell of marijuana. On appeal, the defendant argues that the evidence produced at trial was insufficient to support a conviction for simple possession of marijuana, as the arresting officer failed to describe any specific experience or training that enabled him to identify marijuana, and the substance found in the defendant's car was not tested in the field or in a lab. However, the defendant did not object to the officer's testimony regarding the marijuana cigarette at trial. The jury heard the officer identify the substance as marijuana, and the jury obviously believed the officer. Therefore, we conclude that the evidence is sufficient to convict the defendant of simple possession of marijuana.

SENTENCE

*Standard of Review*

-4-

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

A defendant convicted of a misdemeanor is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Moreover, misdemeanor sentences do not contain ranges of punishments, and a misdemeanor defendant may be sentenced to the maximum term provided for the offense as long as the sentence imposed is consistent with the purposes of the sentencing act. State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). Tennessee's statutory system concerning misdemeanor sentencing is designed to provide trial courts with continuing jurisdiction and a great deal of flexibility. See Tenn. Code Ann. § 40-35-302(d), Sentencing Commission Comments; State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

Regarding DUI offenses, Tennessee Code Annotated section 55-10-403(a)(1) sets mandatory minimum periods for confinement depending on whether the offense is a first or subsequent offense, and subsection (m) provides, "Nothing in . . . the Sentencing Reform Act of 1989[ ] shall be construed as altering, amending or decreasing the penalties established in this section for the offense of driving under the influence of an intoxicant." In addressing whether DUI offenders must be sentenced in accordance with the sentencing act, our supreme court noted:

> [T]he legislature has specifically excluded DUI offenders from the provisions of the Act when the application of the Act would serve to either alter, amend, or decrease the specific penalties provided for DUI offenders. A trial judge may designate a service percentage in a DUI case under Tennessee Code Annotated Section 40-35-302(d) but that percentage may not operate to reduce the mandatory minimum sentencing provisions of the DUI statute.

Palmer, 902 S.W.2d at 394. A DUI offender can be sentenced to serve the maximum punishment for the offense so long as the imposition of that sentence is in accordance with the principles and

purposes of the Criminal Sentencing Reform Act of 1989. Id.

The defendant contends that the trial court erred by failing to adhere to the misdemeanor sentencing guidelines, which provide in pertinent part:

> In imposing a misdemeanor sentence, the court shall fix a percentage of the sentence which the defendant shall serve [in confinement]. . . . In determining the percentage of the sentence to be served in actual confinement, the court shall consider the purposes of this chapter, the principles of sentencing, and the enhancement and mitigating factors set forth in this chapter and shall not impose such percentages arbitrarily.

Tenn. Code Ann. § 40-35-302(d) (2003). Specifically, the defendant claims the trial court erred in applying the enhancement factor regarding the defendant's prior DUI conviction, in finding no mitigating factors, and sentencing the defendant to thirty days in jail. We will address each of these claims in turn.

*Enhancement Factors*

We conclude that the trial court acted properly in using the defendant's previous DUI conviction as an enhancement factor despite the fact that the defendant was convicted for a first-offense DUI. This court has recently held that the trial court properly applied a defendant's previous DUI conviction as an enhancement factor to the defendant's subsequent DUI conviction, despite the fact that the subsequent conviction was a first offense DUI conviction. State v. John Sterling Lewis, No. M2004-02450-CCA-R3-CD, 2006 WL 1816317, at *4-*5 (Tenn. Crim. App. June 28, 2006), app. denied, (Tenn. Nov. 20, 2006). In light of the Lewis ruling, we find no error in the trial court's use of the defendant's previous DUI as an enhancement factor in this case.

*Mitgating Factors*

We also conclude that the trial court did not err in its finding that no mitigating factors applied to the defendant. The defendant argues that mitigating factor (6), "The defendant, because of youth or old age, lacked substantial judgment in committing the offense," should apply. Tenn. Code Ann. § 40-35-113(6) (2006). However, the defendant makes this claim without elaboration. The defendant states that he was, at the time of sentencing, sixty-five years old, but the defendant fails to show how his advanced age caused him to lack substantial judgment in committing the offense. Absent any theory why the mitigating factor should apply, this court cannot be persuaded that the trial court committed error in refusing to apply the factor. See State v. Carey Stanford Richmond, No. E2003-01316-CCA-R3-CD, 2004 WL 1102408, at *4 (Tenn. Crim. App. May 18, 2004). The defendant also argues that the defendant's military service falls under the "any other factor consistent with the purposes of this chapter" exception of section 40-35-113, subsection 13. However, while the trial court may consider military service as a mitigating factor, this court has held that a trial court's refusal to mitigate a defendant's sentence based on past military service was not

error. See State v. Chad Michael Knight, No. M2005-00779-CCA-R3-CD, 2006 WL 1491573, at *3-*4 (Tenn. Crim. App. May 31, 2006); State v. Calvin Louis Hill, No. M2004-00597-CCA-R3-CD, 2005 WL 554710, at *9 (Tenn. Crim. App. Mar. 8, 2005), app. denied, (Tenn. June 27, 2005). Thus, the trial court was within its discretion in refusing to consider the defendant's military service as a mitigating factor.

### Defendant's Confinement

Finally, we hold that the trial court did not err in sentencing the defendant to thirty days in the county jail. In addition to its finding of an enhancement factor and no mitigating factors, the trial court based its sentence on application of the "principles of sentencing" to the evidence presented in the case. See Tenn. Code Ann. § 40-35-302(d). Such principles include whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," and whether the defendant has the potential to be rehabilitated. Tenn. Code Ann. § 40-35-103 (1)(B), (5) (2006).

In this case, in addition to the enhancement factor of the defendant's previous DUI, the trial judge took note of the defendant's verbal abuse toward the arresting officer and the statements made by the defendant at the sentencing hearing. At the hearing, the defendant told the trial judge such things as "I've been in this county right here ever since I was sixteen months old and I've never had my rights violated before until this time," "I want the Deputy Sheriffs that [were] involved in my arrest that night to be charged with assault," "I was mocked and made fun of. . . by the District Attorney," and

> I feel like that my rights [were] violated by allowing the Deputy Sheriffs that arrested me to operate and control the video equipment and to also have access to the drug room over there at the Sheriff's Office by bringing a big old marijuana joint up here in court that did not belong to me and I can prove it.

These statements did not impress the trial judge, who told the defendant:

> [The] statements you made that day at trial and what you're saying here today makes it very clear that you're accepting no responsibility at all for . . . what you have done and for being convicted. It's as if . . . everybody else is wrong and you're right . . . you're accepting no responsibility for your actions at all.

The defendant's verbal abuse of the arresting officer and the defendant's negative views toward the criminal justice system made it unlikely that the defendant would have been rehabilitated through a lesser sentence, and confining the defendant was necessary to avoid depreciating the seriousness of the defendant's offense. Such conclusions were reached by this court in earlier cases. See generally John Sterling Lewis, 2006 WL 1816317, at *5 (trial court's sentence for first-offense DUI of eleven months, twenty-nine days, suspended to six months, was appropriate given enhancement factor of previous DUI conviction and lack of potential for rehabilitation); State v. Carl Martin, No.

W2002-00066-CCA-R3-CD, 2003 WL 57311, at *9 (Tenn. Crim. App. Jan. 2, 2003) (first-offense DUI sentence of eleven months, twenty-nine days, suspended to thirty days, appropriate given the defendant's "crude and obnoxious" treatment of arresting officer, which showed that the defendant had "absolutely no respect for the law" and was unlikely to be rehabilitated). These holdings, coupled with the latitude our sentencing guidelines grant to trial judges in the realm of misdemeanor sentencing, make it evident to this court that the trial court did not abuse its discretion in sentencing the defendant to thirty days in jail.

CONCLUSION

The evidence produced at trial was sufficient for the jury to find beyond a reasonable doubt that the defendant was driving under the influence and possessed marijuana at the time of his arrest. Also, the trial court did not abuse its discretion in sentencing the defendant to eleven months, twenty-nine days in jail, suspended to thirty days, for each DUI conviction. Thus, the judgments are affirmed.

_____

D. KELLY THOMAS, JR., JUDGE