# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs at Knoxville November 2, 2010

## STATE OF TENNESSEE v. PHYLLIS A. POLK

**Appeal from the Madison County Circuit Court**
**No. 09-783      Roger A. Page, Judge**

---

**No. W2010-00788-CCA-R3-CD  - Filed April 18, 2011**

---

The Defendant, Phyllis A. Polk, was convicted by a jury in the Madison County Circuit Court of driving under the influence (DUI), a Class A misdemeanor, and was sentenced to eleven months and twenty-nine days, with credit for time served and the remainder in community corrections. See T.C.A. § 55-10-401 (Supp. 2009) (amended 2010). On appeal, the Defendant contends that the evidence was insufficient to support her conviction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Clifford Knott McGown, Jr., Waverly, Tennessee (on appeal); George Morton Googe, District Public Defender, and Paul Edward Meyers, Assistant Public Defender (at trial and of counsel on appeal), for the appellant, Phyllis A. Polk.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Anna Cash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the trial, Madison County Sheriff's Deputy Joshua Gitchell testified that he had worked for the Sheriff's Department for one year and eight months and that he was trained to administer field sobriety tests. He said that at 4:15 a.m. on May 31, 2009, he was on patrol when he saw the Defendant's Buick Century traveling north on North Highland Avenue in Jackson. He said the car quickly crossed the double yellow lines, came back into the lane, and crossed the dotted line. He stopped the car because of the erratic driving.

Deputy Gitchell testified that he approached the Defendant's car on the driver's side. He said that the window was down and that he immediately smelled alcohol. He said that the Defendant's eyes were red and "extremely glossy" and that her speech was slurred. He said the Defendant was the only person in the car. He said that he asked the Defendant if she had been drinking and that she answered yes. He said that when he asked how much alcohol the Defendant drank, she cried, said she did not want to lose her license, and said she would not tell him how much. He said that he asked the Defendant where she had been and that she indicated the Other Side bar, which was less than a mile away.

Deputy Gitchell testified that he asked the Defendant to step out of her car and that when she did, she stumbled a little and leaned on the car. He said that he asked the Defendant if she had any problems with her legs and that she said no. He said he had the Defendant perform field sobriety tests on smooth and flat ground between her car and his patrol car. He said his headlights provided excellent lighting. He said that he instructed the Defendant to perform a one-legged stand and that he demonstrated the test. He said she held her arms out instead of at her side, leaned in with the foot she was trying to keep six inches off the ground, and kept putting the foot back on the ground. He said that he explained the test a second time and that the same result occurred.

Deputy Gitchell testified that he instructed the Defendant to perform the nine-step, walk-and-turn test and that he demonstrated it. He said she told him she understood the instructions. He said that he asked the Defendant if her legs, knees, and ankles were okay to take the test and that she said they were. He said that as he gave instructions, the Defendant swayed back and forth and that immediately after she began to place one foot in front of the other, she veered off the line. He said the Defendant failed to step heel to toe, veered off the line again after a few steps, took twelve steps instead of the required nine, made an "oval walking turn" instead of the three baby steps required, and counted ten steps back instead of nine.

Deputy Gitchell testified that he arrested the Defendant based upon her performance on the field sobriety tests, slurred speech, red eyes, and odor of alcohol so strong that he felt he "could possibly get intoxicated from it." He said the Defendant pulled away, cried, and said she did not want to lose her commercial driver's license. He said he handcuffed her without a problem and put her in the back of his patrol car while he retrieved an implied consent form.

Deputy Gitchell testified that he asked the Defendant to pay attention while he read the form and that he read it to her twice. He said that the first time he read the form to the Defendant and asked her if she would submit to the test, she said she did not understand what he was saying. He said that after he read the form a second time, he asked if she understood

and that she said, "Yes, I do." He said that the Defendant refused to submit to the test and that she said she was too drunk to give blood. He said that he asked the Defendant to sign the form to indicate her refusal and that she said she would not sign. He said he wrote, "Refused to sign" on the signature line and "Refusal at time of signature" on the side. He said he signed the form at 5:25 a.m.

On cross-examination, Deputy Gitchell testified that when he described the Defendant's driving as erratic, he meant that the car moved across the double yellow and dotted lines. He agreed that the movement over the lines happened quickly and said that the Defendant had room to correct the car inside the lane but did not. He agreed he followed the Defendant and observed her driving for about two minutes. He said he immediately smelled alcohol when he approached the Defendant's car window. He agreed that at the preliminary hearing, he said he smelled alcohol after about fifteen seconds. He said he smelled alcohol in the time it took him to ask for her driver's license, insurance, and registration. He agreed that at the preliminary hearing, he said the Defendant told him she had four to five beers, and he said that was incorrect. He said the Defendant told him she had been drinking but did not tell him how much she drank.

Deputy Gitchell testified that he had been with the Sheriff's Department since October 2009. He said the instructions he gave for the one-legged stand were:

> With your hands down by your side, your feet together, I need you to point your toe, either foot, whichever you want to–whichever you want to use. Point your toe about six inches off the ground, about a beer can's [height]. I want you to stand like that until I tell you to stop.

He agreed he was also supposed to ask the driver if she understood the instructions and tell the driver not to start until told, to keep the leg straight at all times, and to count as one-one thousand. He said he usually told the driver to count for eighteen to twenty seconds. He agreed that the training manual said to count for twenty-five seconds but said he shortened the time if the person were in danger of falling. He said that he was not worried about the Defendant's safety when he gave the instructions but that as she tried to finish, he became worried and stopped the test. He agreed he then told the Defendant to start the nine-step, walk-and-turn test. He denied that he could have arrested the Defendant at that point without giving another test.

3

Deputy Gitchell testified that his instructions for the nine-step, walk-and-turn were:

> You start on the line and you put your feet together. When you put your feet together I need you to take nine steps. You put one foot in front of the other, nine steps. Take nine steps forward, keep one foot planted, three small baby steps and then turn, in a turning motion. Come back nine steps and you stop.

He agreed it was also important for the driver to keep her arms at her side and watch her feet. He said that he asked the Defendant if she understood and that she said she did.

Deputy Gitchell testified that the traffic stop was not recorded and that no other officer was present. He said he was not surprised that at the preliminary hearing, he had testified that Investigator Long was present. He agreed he arrested the Defendant before he reviewed the implied consent form with her.

On redirect examination, Deputy Gitchell testified that he did not think the Defendant could have held the one-legged stand for twenty-five seconds. He said she continued to put her foot down and hold her arms out after he explained how to perform the test a second time. He said that he did not remember whether Investigator Long was there, but he agreed that when a car was towed after an arrest, an officer usually stayed with the car until it was towed. He said that he did not remember if the Defendant told him she did not trust him but that the reason she gave for not signing the implied consent form was that she was too drunk to sign.

The Defendant testified that during the day on May 31, 2009, she shopped and traded at yard sales. She said she met a man who invited her to see him perform in a midnight show at the Other Side club. She said that customers were to bring their own alcohol and that she purchased two twenty-four ounce beers for the show. She said that she was at the club for four hours and that she drank the beers while she was there.

The Defendant testified that she had not been to the area before and that when she left the club, one of the employees suggested she take the Highway 45 Bypass past Hopper Barker Road, take the expressway there, and circle back to Jackson. She said she was the only person to leave the club at about 4:00 a.m. She said that she needed corrective lenses to drive and that she was wearing glasses, but she said that it was pitch dark outside and that she could not see where she was going. She said she saw patrol lights flashing after she crossed Hopper Barker Road. She said that she and the deputy were the only drivers on the road and that she pulled onto the emergency lane because she thought the deputy was on his way to an emergency. She said she was surprised when the deputy parked behind her.

4

The Defendant testified that she started to step out of her car when the deputy was walking toward her and that the deputy told her to get back into the car. She said the deputy asked for her driver's license, registration, and insurance papers. She said that she had left her driver's license in the passenger seat when she bought the beer but that she gave the insurance papers to the deputy. She said the only lights were from the patrol car's headlights behind her and the deputy's flashlight, which was shining on her lap.

The Defendant testified that the deputy asked her to get out of the car and that she walked to a point about midway between the cars. She said the only light came from the patrol car's headlights and that those were bright in her face. She said she was not wearing glasses. She said that the deputy told her to "do a walk," and that she asked, "Is that the one where you put one foot in front of the other?" She said that he answered yes and that she put one foot in front of the other and pivoted around as in a military turn. She said that she was not given instructions on how to turn and that she tried to imitate what she had seen on the television show "Cops."

The Defendant testified that the deputy told her to do the "foot stand" and that he gave no instructions. She said she did not know how to do the foot stand and that apparently she did not do it correctly. She said that the deputy asked her for blood and that she was scared because it was dark and she was alone with the deputy. She said that her license was not issued in Tennessee and that she did not know anything about a blood test. She said that she asked the deputy where the blood would be drawn and that she said, "I know we're not going to be doing it out here." She said the deputy told her it did not matter because he was arresting her anyway.

The Defendant testified that she was not impaired when she got into her car and that she would not risk her license. She said that she first obtained her commercial driver's license at the age of sixteen and that it had no blemishes. She said that the license allowed her to drive charter and school buses and that she was entrusted with the lives of other people. She agreed she was nervous and scared when the deputy stopped her.

On cross-examination, the Defendant testified that on that day, she finished shopping at yard sales at about 4:00 p.m. She said that between 4:00 p.m. and midnight, she found a place to put the china she bought and spent time with her twelve-year-old son. She said the first drink she had that night was at midnight. She acknowledged that a twenty-four ounce beer was the equivalent of two regular-sized beers and that she drank the equivalent of four regular-sized beers at the club.

The Defendant testified that she was not wearing her glasses at the club but that she put them on when she got into her car. She said that when the officer stopped her, she took

5

off her glasses and that when she got out of the car, she kept explaining that she could not see. She said that she did not ask the officer if she could get her glasses and that she did not want to reach into her car or ask him anything because she was scared.

The Defendant testified that Deputy Gitchell was not the officer who arrested her and that he was not at the scene of her traffic stop. She said her arresting officer was a tall, elderly gentleman who was shorter than her. She said she went to the Sheriff's Department and learned from her arrest report that the arresting officer's name was Mr. Long. When informed that Investigator Long was about the age and height of the female prosecutor, the Defendant said that she did not know Investigator Long but that the officer who arrested her was a tall, elderly gentleman with gray hair, a mustache, and a full build. She said that at her first hearing, no officer was present and that at her second hearing, Deputy Gitchell was there but that he was not the one who arrested her. She agreed that she did not request a second officer at the time of her traffic stop and said the officer who arrested her was kind and did not assault her.

The Defendant testified that her driver's license was not initially issued in Tennessee but that when she moved to Tennessee, she transferred her license to this state. She said that she surrendered her old license for her new one but that she was not given information, instructions, or a rule book.

On rebuttal, Deputy Gitchell testified that he was patrolling by himself on May 31, 2009. He said that he was certain he arrested the Defendant and that he was positive he asked the Defendant to perform the field sobriety tests. He said he gave detailed instructions to the Defendant for the sobriety tests. He agreed that he was required to complete a citation form charging the Defendant and that a citation form was always completed by the arresting officer. He identified the citation charging the Defendant, his handwriting in the narrative section of the citation, and his signature as the charging officer. He identified an offense report and agreed that it was the typed version of the citation. He said the report stated that Joshua Gitchell and Christopher Long responded. He said Investigator Long's role on the night of the Defendant's arrest was to stay with the Defendant's car until it was towed. He said Investigator Long was under forty, fairly small in stature, and had sandy brown hair.

On recross-examination, Deputy Gitchell testified that he did not remember Investigator Long's presence at the scene. He said that someone had to stand with the Defendant's car and that the report said it was Investigator Long.

The jury convicted the Defendant of DUI, and the trial court sentenced her to eleven months and twenty-nine days, with credit for time served and the remainder in community corrections. On appeal, the Defendant contends that the evidence was insufficient to support

6

her conviction because Deputy Gitchell's testimony was not credible and the traffic stop was not recorded. The State contends that the evidence supported the Defendant's conviction and that the jury reasonably credited Deputy Gitchell's testimony. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

No requirement exists that the State prove its case by more than the arresting officer's testimony in order to establish proof beyond a reasonable doubt. See State v. Vassar, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993). In the light most favorable to the State, the proof shows that Deputy Gitchell stopped the Defendant after he saw her drive her car across a double yellow line, fail to center her car when it returned to the lane, and drive across a dotted line. The Defendant smelled strongly of alcohol, had red eyes and slurred speech, stumbled and leaned as she left her car, exhibited indicators of impairment during two field sobriety tests, and admitted she drank the equivalent of four beers within four hours of the stop.

The Defendant argues that Deputy Gitchell exaggerated to the point of making his testimony incredible when he said that the alcohol odor coming from the Defendant was strong enough for him to become intoxicated by it. As the State notes, the Defendant's credibility was shaken by her denial of impairment after her admission that she drank forty-eight ounces of beer and by her confusion regarding who arrested her. Deputy Gitchell's presence at the scene as the arresting officer was corroborated by the implied consent form, citation, and offense report. We will not disturb the jury's determination of witness credibility. We conclude that a reasonable trier of fact could have found beyond a reasonable doubt that the Defendant was driving while under the influence of alcohol.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE