IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 15, 2011 Session

**STATE OF TENNESSEE  v. JAMES K. YOUNG**

**Appeal from the Criminal Court for Hamblen County**
**No.  09CR282      John Dugger, Jr., Judge**

_____

**No.  E2011-00289-CCA-R3-CD - Filed June 22, 2012**

_____

The Defendant, James Young, was convicted by a jury of driving under the influence (DUI), first offense, a Class A misdemeanor. See Tenn. Code Ann. § 55-10-401.  The trial court suspended the Defendant's driver's license for one year and sentenced him to eleven months and twenty-nine days' incarceration with all but thirty days to be served on probation.  In this appeal as of right, the Defendant contends that the evidence was insufficient to sustain his conviction for DUI, first offense.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Jonathan M. Holcomb, Morristown, Tennessee, for the appellant, James K. Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Kimberly Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Defendant was indicted on January 25, 2010, for DUI, first offense, and violation of the implied consent law (implied consent).  A jury trial was held on November 4, 2010.

Officer Dustin Jones testified that he had been a patrol officer with the Morristown

Police Department for approximately five years and that he had been periodically trained on "DUI stops." He explained that his training taught him to look for the following indicators in DUI cases: "erratic driving, slurred speech, glassy red eyes, not making a whole lot of sense of what you're doing or where you're going to, fumbling excessively getting your licence, taking . . . a long time to get . . . your license and your insurance paperwork and registration and stuff."

Officer Jones testified that on January 10, 2009, he saw the Defendant's vehicle make a U-turn at approximately 2:00 a.m. The Defendant then made a right turn, "completely" crossing into the left-hand lane of traffic, and drove into a ditch before returning to the correct lane. Officer Jones then pulled the Defendant over. He testified that the Defendant's speech was "somewhat slurred" and his "eyes were kind of glassy, glossed over." According to Officer Jones, it took the Defendant "an extremely long time" to retrieve his driver's license from his wallet. Officer Jones testified that he "believed [the Defendant] was too impaired to be driving." However, Officer Jones did not smell alcohol, and there was no evidence of alcohol or pills in the Defendant's car. The Defendant told Officer Jones that he was out buying an anniversary present for his wife and that he had accidently missed his turn. The Defendant denied having anything to drink that day.

Officer Jones gave the Defendant two "pre-exit tests." Officer Jones asked the Defendant to do the four-finger count test, which required him to count to four and back down to one, touching his thumb to his fingers. The Defendant counted but did not touch his fingers, claiming that he did it "in his head." Officer Jones then showed the Defendant how to perform the test and the Defendant completed the test. Officer Jones then asked the Defendant if he knew the alphabet. The Defendant responded that he did and began to recite it. Officer Jones stopped the Defendant and instructed him to recite the letters E through P. The Defendant performed "fairly well" but hesitated with the letter L.

Officer Jones then asked the Defendant to step out of the vehicle to perform some field sobriety tests. The Defendant told him that he "had a pain doctor." When asked if this affected his walking, the Defendant responded that it did not. When asked to perform the field sobriety tests, the Defendant simply stated "that there would be no way he could do it" and "would make no attempt at all to do any" of them. Officer Jones placed the Defendant under arrest for DUI. The Defendant then refused to submit to a blood test and refused to sign the implied consent form. Officer Jones informed the Defendant that he would lose his license for failing to submit to a blood test.

Officer Jones's cruiser video was played for the jury, and he testified that the video accurately depicted what occurred during the stop. However, the video only captured the events occurring after the Defendant made the right turn. The video illustrated that as

Officer Jones approached the Defendant, he turned right onto what was identified as Jaybird Road. As Officer Jones turns to follow the Defendant, the "dash-camera" shows the Defendant's car in the far left hand lane, veering right, in an attempt to return to the proper lane of travel. Shortly after Officer Jones initiated the stop, the Defendant complied. The video did not capture the Defendant's car entering a ditch; however, Officer Jones immediately asked the Defendant why he was in the ditch; his response was inaudible.

After a brief exchange, Officer Jones asked the Defendant to produce his driver's license. It took the Defendant well over one minute to produce his license, and a few moments longer to retrieve other paperwork. The Defendant denied that he had been drinking. At this point, Officer Jones told the Defendant that he needed to administer "a quick test." Officer Jones conducted both the four-finger count and the alphabet tests and, subsequently, asked the Defendant to step out of his car. The Defendant was agreeable, but he cautioned Officer Jones that he would comply provided that the officer did not ask him to walk because he had a pain doctor. When asked how that affected his walking, the Defendant responded that it did not. The Defendant stepped out of his car, and he attempted the first test, following Officer Jones's finger with his eyes. He appeared to have trouble with Officer Jones's instruction to only move his eyes, not his head. During the field test, additional officers arrived on the scene. The Defendant initially attempted to do the second test, but he reiterated his patient relationship with a pain doctor and, ultimately, refused to complete any additional tests. Officer Jones then informed the Defendant that he was under arrest for DUI.

The Defendant testified that he was out to buy his wife an anniversary gift at 2:00 a.m., although their anniversary was eight days later. The Defendant admitted that he made a U-turn and drove into the left-hand lane, but he claimed that he did so to avoid a pothole. The Defendant denied driving his car into a ditch. The Defendant also denied being intoxicated when he was stopped. The Defendant did admit that he had taken Oxycontin, Roxicodone, and blood pressure medicine that day. The Defendant testified that he had been taking those medications for eight years and understood that "you have to use care while you're driving" on those medications. The Defendant testified that he had several medical issues that made performing the field sobriety tests impossible, such as a "messed up" disk, arthritis, and "a pinched nerve in [his] neck." He further explained that he could not stand on one leg or walk in a straight line touching heel to toe and that he told Officer Jones about his back. However, the Defendant did admit that he worked for his brother's contracting company, painting, but that he had to do it "level" and for no longer than twenty to thirty minutes at a time. The Defendant testified that it took him so long to get his license because of the way his wallet was organized. The Defendant further testified that he did not submit to a blood test because he was already under arrest, and he had never heard of someone being "unarrested" for passing a blood test.

On cross-examination, Officer Jones testified there was no pothole in the pavement on Jaybird Road at the time he arrested the Defendant. Officer Jones also testified that, at the time of trial, the double yellow lines on Jaybird Road were not the same because the road had been widened since the Defendant's arrest.

The jury subsequently found the Defendant guilty of DUI, first offense; it does not appear from the record that the implied consent charge was ever presented for jury determination at trial. The Defendant was sentenced to eleven months and twenty-nine days with thirty days to be served in confinement, and his driver's license was suspended for one year.

## ANALYSIS

The Defendant contends that the evidence was insufficient to sustain his conviction. The Defendant argues that there was no proof of his alleged intoxication presented at trial. The Defendant also argues that his U-turn was not illegal and that he did not drive as erratically as the officer claimed. The Defendant maintains that he passed Officer Jones's pre-exit tests and claims that he stammered because he was intimidated by the officer. The Defendant explains that he was not refusing to perform the field sobriety tests; he just "couldn't do it." Based on this, the Defendant concludes that the evidence was insufficient to sustain his conviction.

The State responds that viewing the evidence in the strongest legitimate light in favor of the State, the evidence was sufficient to sustain the conviction. The State points out that the Defendant drove on the wrong side of the road, his speech was somewhat slurred, his eyes were glassy, he took a long amount of time to retrieve his license, and he seemed somewhat disoriented. The State also points out that the Defendant had trouble complying with Officer Jones's instructions to the pre-exit tests and refused to attempt the field sobriety tests without providing a reason. The State concludes this was sufficient evidence to sustain the Defendant's conviction.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); see also State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the

jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Our supreme court recently clarified that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted). Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

The Defendant was convicted of DUI in violation Tennessee Code Annotated section 55-10-401. The statute states, in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises that is generally frequented by the public at large, while:
> (1) Under the influence of any intoxicant, marijuana, controlled substance, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of himself which he would otherwise possess.

This court has held that in DUI cases, a police officer's testimony, by itself, is sufficient evidence to convict a defendant of DUI. See State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993) (stating that the State did not need more than the deputy's testimony to prove its DUI case).

Construing the facts in a light most favorable to the State, the Defendant aroused the

-5-

suspicion of a law enforcement officer after he made a U-turn. Before Officer Jones could make a U-turn to follow him, the Defendant made a right turn. In doing so, the Defendant's car crossed the double yellow line and momentarily veered off the pavement into a shallow ditch before returning to his own lane of travel. It was at this point that Officer Jones initiated the stop.

The Defendant argues that his driving on the night in question was lawful and justified. He also insists that there is no credible evidence of his being under the influence of an intoxicant. The Defendant's testimony and argument were presented to, heard and rejected by the jury, as is its province. We hold that the evidence is sufficient to support the jury's determination that the Defendant was operating his vehicle on a public road while under the influence of an intoxicant. Officer Jones's testimony and the cruiser video illustrate that the Defendant made a U-turn at 2:00 a.m.; that, in making a right turn, the Defendant veered into the opposite lane of travel, crossing the double yellow lines, and drove into a ditch; that the Defendant had slurred speech and was somewhat disoriented when the officer pulled him over; and that the Defendant fumbled with his license. We note that this court has consistently held that an arresting officer's testimony alone is sufficient to support a defendant's conviction for DUI. See, e.g., State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993); State v. Phyllis A. Polk, No. W2010– 00788–CCA–R3–CD, 2011 WL 1466434, at *5 (Tenn. Crim. App. Apr. 18, 2011). Furthermore, arguments presented in the Defendant's appellate brief, such as the Defendant's performance on the field sobriety tests, go to the weight and credibility of the evidence, which are matters for determination by the jury. See Bland, 958 S.W.2d at 659. This Court will not re-weigh or re-evaluate the evidence. See State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003). Accordingly, we conclude that the evidence supports the verdict rendered by the jury and uphold that verdict.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE