IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2009

## STATE OF TENNESSEE v. BRENT WALKER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-00843     W. Mark Ward, Judge**

---

**No. W2008-01129-CCA-R3-CD  - Filed June 16, 2009**

---

The defendant, Brent Walker, was convicted by a Shelby County jury of three counts of second offense driving under the influence, which the trial court merged into a single conviction; one count of reckless driving; one count of refusal to submit to a blood-alcohol concentration test while driving on a revoked license with license revoked for prior driving under the influence; and one count of driving on a revoked license.  He was sentenced to an effective term of one year to be served in confinement and five months, twenty-nine days on probation.  The defendant appeals, arguing that the evidence was insufficient to support his convictions and that the trial court imposed an excessive sentence.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender; Phyllis L. Aluko (on appeal) and Amy G. Mayne (at trial), Assistant Public Defenders, for the appellant, Brent Walker.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William L. Gibbons, District Attorney General; and Charles W. Bell, Jr. and Abby Wallace, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In January 2007, the defendant was indicted in a six-count indictment of:  (1) driving under the influence (DUI) of an intoxicant, (2) DUI of an unknown drug or drugs, (3) DUI of an intoxicant and unknown drug or drugs, (4) reckless driving, (5) refusal to submit to a blood-alcohol concentration (BAC) test while driving on a revoked license with license revoked for prior DUI ("enhanced refusal to take BAC test"), and (6) driving on a revoked license.  A trial was conducted

on the matter in March 2008. Evidence of the defendant's having been previously convicted of DUI as relevant to counts one, two, three, and five was not presented to the jury during the first stage of the trial. Such evidence would be presented during a second stage of trial in the event of conviction.

Officer Gregory Patrick with the Memphis Police Department testified that he worked in the Organized Crime Unit, a drug response team that investigates drug complaints, in September 2006. On September 8 of that year, he was driving an unmarked police car while working on a drug investigation when he saw an "old gray Toyota minivan" drive past him at a high rate of speed. Officer Patrick attempted to flag down the driver, identified as the defendant, to get him to slow down, but the defendant never hit his brakes and drove past. Officer Patrick could see that the defendant was not wearing his seatbelt and that the minivan did not have a license tag. Officer Patrick activated the blue lights and siren on his patrol car and followed the minivan.

Officer Patrick testified that the defendant did not stop immediately, but instead drove "somewhat erratically" and ran two stop signs before pulling over. When Officer Patrick approached the minivan, he saw the defendant make a leaning motion as if he were reaching for something behind the front passenger seat. Officer Patrick asked the defendant for his license, but he said that he did not have one. A license check revealed that the defendant's license had been revoked. Officer Patrick noticed that the defendant "had watery eyes, [that] were kind of bloodshot and there was a smell of some intoxicant coming from the vehicle." He also smelled the odor of the intoxicant in his patrol car after the defendant had been sitting in the car for awhile.

Officer Patrick had the defendant exit his vehicle and noticed that "he had problems walking. He was unsteady on his feet." He put the defendant in the backseat of his police cruiser, and he and the backup officers searched the defendant's vehicle. They found an open bottle of gin and an open can of beer in the area where Officer Patrick had seen the defendant reaching. However, he admitted that the containers were not tagged into evidence and were probably thrown away. Officer Patrick asked the defendant if he would submit to a field sobriety test and a BAC test, and the defendant said he would. Officer Patrick called for the "DUI Unit" and then changed locations to conduct the test because the area they were in was "somewhat dark."

Officer Daniel Charles Banks, III, with the Memphis Police Department testified that he is specially trained to conduct DUI tests. On September 8, 2006, he conducted field sobriety tests on the defendant, and in his opinion, the defendant performed "very badly" and did not follow instructions. He also noticed an odor of intoxicant about the defendant. Officer Banks put the defendant in the backseat of his patrol car and had him read the implied consent form. The defendant said that he would not take a breath test. Based on Officer Banks' observations of the defendant's appearance and performance on the field sobriety tests, Officer Banks believed the defendant to be "very much impaired."

On cross-examination, Officer Banks acknowledged that the defendant advised that he had pins in both ankles and did not want to do the one-leg stand test, but was willing to try when asked. He did not recall the defendant offering to take a blood test.

Dianne Joyner of the Tennessee Department of Safety provided a copy of the defendant's driving history, which showed that the defendant's driver's license was in a revoked status on September 8, 2006.

The defendant testified that he was fifty-one years old at the time of trial and suffered from a host of medical conditions, including migraines, gastrointestinal problems, and orthopedic problems, for which he took medication daily. Due to his medical problems, the defendant did not have a normal routine or steady job. However, on September 8, 2006, he had planned to work on the fuel system of his niece's minivan. After eating breakfast that morning, the defendant took his pain medication, Oxycodone, and at approximately 9:00 a.m. drank a twenty-four-ounce beer. He explained that he drank a beer with his medicine to better help with the pain because he knew he was going to be "crawl[ing] on the ground and do[ing] some lifting, shoving, pushing and pulling." He acknowledged that he knew he should not drink alcohol with Oxycodone but did it anyway.

The defendant testified that he worked on his niece's van the entire day. Around 8:00 p.m., as he was test-driving the van, the defendant was pulled over by Officer Patrick and the Organized Crime Unit. The defendant admitted to Officer Patrick that he did not have a driver's license, and the officer placed the defendant in the backseat of the patrol car while he ran the identification number on the van. The defendant testified that the officers searched the van but did not find anything.

The defendant testified that Officer Patrick asked if he would take a blood alcohol test, to which he agreed, but the officer called for a tow truck to take the van away before calling the DUI officer. After the van was towed away, Officer Patrick got back into the patrol car and drove to another location, which made the defendant nervous because it was in the opposite direction of the jail. They stopped in a parking lot where the sobriety tests were eventually conducted, but the defendant felt that the tests should have been conducted at a church or senior citizens' center in the area where he was pulled over. The defendant described the area where he was taken for the tests as "very inhumane, [he] wouldn't treat a dog the way [he] was treated." He elaborated that "[y]ou could hear trucks, fire things and just nasty, filthy, dark, you know, real scary."

The defendant stated that he was "scared to death" during the sobriety tests because Officer Parker had not informed him of where he was taking him or that they were meeting Officer Banks. He said he did not want to take the tests because he was not physically able to do so as a result of his health problems, including osteoporosis, arthritis, a hernia, digestive problems, depression, migraines, and broken ankles in the past. He said he had documentation from doctors stating that he cannot put one foot in front of the other, but he acknowledged that he did not bring those records with him to trial.

The defendant maintained that he had not had anything to drink before getting in the van and was not drinking in the van. He said that he was not speeding and had his seatbelt on when he was stopped, but he admitted that the van did not have tags. He explained that he did not want to take a breath test because "[a]n attorney in the past told [him] [he] should never take one because of [his]

GI problems." The defendant stated that he would have taken a blood test had the officer asked. However, he "wasn't going to volunteer nothing because [he] ain't got nothing to prove to them."

Following the conclusion of the proof, the jury convicted the defendant of three counts of DUI, one count of reckless driving, one count of refusal to submit to a BAC test while driving on a revoked license, and one count of driving on a revoked license. A second stage of trial was then conducted to determine whether the defendant had previously been convicted of DUI as relevant to counts one, two, three, and five. During the second stage, the parties stipulated that the defendant had previously been convicted of DUI and read the following stipulation into evidence:

> The defendant, Brent Walker, has stipulated that on September 8, 2006, in Shelby County, Tennessee and before the finding of the indictment at the time of the aforesaid offense had been convicted of one prior offense of driving a motor vehicle upon a public highway while under the influence of an intoxicant to wit, on June 25, 2001, in General Sessions Court, Division X of Shelby County, Tennessee, docket number 01-112720.

The jury deliberated again and found the defendant guilty in counts one through three of second offense driving under the influence, and in count five of refusal to submit to BAC test while driving on a revoked license with license revoked for a prior DUI.

After a sentencing hearing, the trial court merged the DUI convictions into one conviction and sentenced the defendant to eleven months, twenty-nine days for that offense, the driving on a revoked license conviction, and the enhanced refusal to submit to BAC test conviction, and to six months for the reckless driving conviction. The trial court ordered that the sentences for DUI, reckless driving, and driving on a revoked license be served concurrently and that the defendant serve six months of that sentence in custody. The court ordered that the defendant serve six months of his sentence for enhanced refusal to submit to BAC test in custody, to be served consecutively to the time served on the other sentences. The remainder of the defendant's sentences was to be served on probation. His effective sentence was one year in custody with five months, twenty-nine days on probation.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence convicting him of DUI and enhanced refusal to take a BAC test. He argues that there was insufficient proof that he drove the minivan while under the influence of any intoxicant or drug producing stimulating effects on the central nervous system. He argues, with regard to the enhanced refusal to take a BAC test conviction, that he would have agreed to take a blood test had one been offered and that the State failed to introduce evidence that his license had been revoked because of his prior DUI.

-4-

When reviewing a challenge to the sufficiency of the convicting evidence, we note that the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Driving Under the Influence

Tennessee Code Annotated section 55-10-401(a)(1) provides, "It is unlawful for any person to drive . . . any automobile . . . on any of the public roads and highways of the state while . . . [u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system[.]"

In the light most favorable to the State, the evidence shows that Officer Patrick saw a minivan, driven by the defendant, pass by him at a high rate of speed. The defendant was not wearing a seatbelt, and the van did not have tags. The officer attempted to pull the defendant over, but the defendant did not stop. Officer Patrick followed the "somewhat erratically" driving defendant and noted that he ran two signs before finally pulling over. He saw the defendant make a leaning motion as if he were reaching for something behind the front passenger seat, where an open can of Icehouse beer and a bottle of gin were later found. The defendant "had watery eyes, [that] were kind of bloodshot and there was a smell of some intoxicant coming from the vehicle." The defendant also had problems walking and was unsteady on his feet.

The DUI officer, Officer Banks, conducted field sobriety tests on the defendant, and in his opinion, the defendant performed "very badly" and did not follow instructions. Officer Banks believed the defendant to be "very much impaired." Officer Banks also noticed an odor of intoxicant about the defendant. The defendant admitted to taking Oxycodone for pain and mixing it with a beer earlier that day, despite knowing that doing so enhances the effect of the drug. The jury heard the defendant's explanation that his poor performance on the sobriety tests was due to his medical problems and, in its prerogative, chose not to believe his explanation. The jury, instead, by its verdict, accredited the testimony of the two officers. This court has often found that an arresting officer's testimony alone is sufficient to support a defendant's conviction for DUI. See, e.g., State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993); State v. Lester Boyd Baird, No. M1999-00181-CCA-R3-CD, 2000 WL 175343, at *2-3 (Tenn. Crim. App. Feb. 16, 2000). We conclude that there was sufficient evidence for a rational jury to find that the defendant drove under the influence. Moreover, the parties stipulated that the defendant had previously been convicted of DUI; therefore, sufficient evidence was presented for the jury to conclude that this was the defendant's second offense DUI.

### B. "Enhanced" Refusal to take BAC Test

Tennessee Code Annotated section 55-10-406(a) provides that any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic and/or drug content of that person's blood. Id. § 55-10-406(a)(1).

> If such person, having been placed under arrest and then having been requested by a law enforcement officer to submit to either or both tests, and having been advised of the consequences for refusing to do so, refuses to submit, the test or tests to which the person refused shall not be given, and the person shall be charged with violating this subsection (a). The determination as to whether a driver violated this subsection (a) shall be made at the same time and by the same court as the court disposing of the offense for which the driver was placed under arrest.

Id. § 55-10-406(a)(4)(A). If the court finds that the driver violated subsection (a), the court shall revoke the license of the driver for a period of two years if the driver has a prior DUI conviction. Id. § 55-10-406(a)(4)(A)(ii). If the court or jury determines that the driver violated subsection (a) while driving on a license that was revoked, suspended, or cancelled because of a conviction for, as relevant here, driving under the influence, "the driver commits a Class A misdemeanor and shall be fined not more than one thousand dollars ($1,000), and shall be sentenced to a minimum mandatory jail or workhouse sentence of five (5) days, which shall be served consecutively, day for day, and which sentence cannot be suspended." Id. § 55-10-406(a)(5).

At approximately 22:04:05 on the videotape of the encounter between Officer Banks and the defendant, the defendant can be heard refusing to take a breath test. The defendant admitted at trial that he refused to submit to a breath test because an attorney had previously advised him against taking such a test due to his gastrointestinal problems. Even though he claims he was willing to take

a blood test instead, he was not entitled to choose the type of BAC testing method. See State v. Turner, 913 S.W.2d 158, 162-63 (Tenn. 1995). Therefore, there was sufficient evidence that the defendant refused to take a BAC test.

The defendant also argues with regard to this conviction that there was insufficient evidence that his license had been revoked *because* of his prior DUI to support his conviction for refusal to take a BAC test while driving on a revoked license with license revoked for prior DUI. We acknowledge that the stipulation that the defendant had a prior DUI did not mention that his license had been revoked because of that DUI. However, the stipulation did state that the defendant's prior DUI conviction occurred on June 25, 2001, and the defendant's driving record, entered as an exhibit during Dianne Joyner's testimony, shows that his license was revoked on June 25, 2001. As such, a rational trier of fact could infer that the license revocation was a result of the DUI. The defendant is not entitled to relief.

## II. Sentencing

The defendant argues that the trial court imposed an excessive sentence. He asserts that the court failed to consider his medical history of physical ailments and depression as mitigating evidence. He also asserts that the trial court improperly enhanced his sentence of confinement from forty-five days, the minimum for second offense DUI, to six months at 100%, based on his having "no hesitation about committing a crime when the risk to human life was high" when there was no proof that any other person was actually threatened by his driving. He argues that the remaining enhancement factor, his criminal history, was insufficient to support the enhancement of his sentence.

Appellate review of misdemeanor sentencing is *de novo* on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. §§ 40-35-401(d), -402(d) (2006). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. See Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Cmts.

The trial court is afforded considerable latitude in misdemeanor sentencing. See, e.g., State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). When imposing a misdemeanor sentence, the trial court is not required to conduct a sentencing hearing, but it must afford the parties a reasonable opportunity to address the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). Moreover, the trial court is not required to place specific findings on the record, State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998), but must consider the principles of sentencing and the appropriate enhancement and mitigating factors in determining the percentage of the sentence to be served in actual confinement. Tenn. Code Ann. § 40-35-302(d).

After review, we conclude that the defendant has failed to show his sentence is improper. The record shows that the court received information regarding the defendant's medical history and

noted that it was considering the evidence and information offered by the parties as to mitigating and enhancement factors. However, the court, in its discretion, determined that it "can't really find any mitigation factors applicable in this case." With regard to the enhancement factors, the State concedes that the trial court should not have applied the enhancement factor regarding the commission of an offense when the risk to human life was high, see Tenn. Code Ann. § 40-35-114(10), as there was no specific testimony regarding the risk to others caused by the defendant's actions. See State v. Rhodes, 917 S.W.2d 708, 714 (Tenn. Crim. App. 1995). In any event, the court said that it did not "put a great deal of weight on [that factor]," and the defendant's previous convictions for DUI, violation of the open container law, possession of drugs, and violation of probation provided a sufficient basis for the trial court's enhancement of the defendant's sentence. We note that, unlike a felon, a misdemeanant is not entitled to the presumption of a minimum sentence. State v. Seaton, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). The record supports the sentence imposed by the trial court.

## CONCLUSION

Based on the aforementioned authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE