# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 29, 2010 at Knoxville

## STATE OF TENNESSEE v. STEVE BILLMAN, JR.

**Appeal from the Circuit Court for Wayne County**
**No. 14531     Jim T. Hamilton, Judge**

---

**No. M2009-02169-CCA-R3-CD - Filed November 18, 2010**

---

The Defendant, Steve Billman, Jr., was convicted of driving under the influence (DUI), second offense, a Class A misdemeanor, and violation of the implied consent law, a Class C misdemeanor. Following a sentencing hearing, the trial court sentenced the Defendant for DUI, second offense, to 11 months and 29 days suspended to probation following the service of 60 days in the county jail. In this appeal as of right, the Defendant contends that (1) the evidence was insufficient to sustain his conviction for DUI and that (2) the trial court erred in denying the Defendant's motion for a mistrial. Following our review, we conclude that the trial court abused its discretion in declining to grant a mistrial. Therefore, we reverse the judgment of the trial court and remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed; Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Anita Zona-Peters, Lawrenceburg, Tennessee (on appeal); and John S. Colley, III, Columbia, Tennessee (at trial), attorneys for appellant, Steve Billman, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; T. Michael Bottoms, District Attorney General; and Joel Douglas Dicus, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

**OPINION**

The Defendant was initially indicted for DUI, second offense; violation of the implied consent law; and possession of marijuana. Following a hearing on the Defendant's motion to suppress the marijuana found during the stop, the possession of marijuana charge was dismissed.

At trial, Deputy Cameron Clay McDonald of the Wayne County Sheriff's Department testified that he was not working the night the Defendant was arrested, October 29, 2008. As he was driving home from his parent's house in his personal vehicle, the Defendant passed him at a "high rate of speed." Deputy McDonald stated that he was driving south on Highway 13 when the Defendant "came around [him] real quickly and got back in the southbound lane." He called Sergeant Aaron Cody Mace[1] and told him about his observations because he knew that Sergeant Mace was working that night. After the Defendant passed him, he saw the Defendant cross "into the opposite lane of traffic" for approximately eight seconds. Deputy McDonald continued to follow the Defendant at a reasonable distance while continually updating Sergeant Mace. Once they arrived into town, the Defendant went to Barlow's One Stop drive-thru. Deputy McDonald went to the Piggly Wiggly parking lot and parked where he could observe the Defendant. When the Defendant left the store, Deputy McDonald pulled behind the Defendant and followed him. As he was following, he saw that the Defendant's tires "crossed into the turning lane at least three times." Additionally, he observed the Defendant as the Defendant "roll[ed] through [a] stop sign." When Sergeant Mace arrived and started to follow the Defendant, Deputy McDonald went home. Deputy McDonald stated that had he been working that night, he would have stopped the Defendant when he crossed into the opposite lane of traffic on Highway 13.

On cross-examination, Deputy McDonald stated that he was driving 55 or 60 miles per hour when the Defendant passed him. He admitted that the Defendant passed him in a passing zone and stated that the Defendant was likely driving 65 or 70 miles per hour. He admitted that he went to the sheriff's department that night but stated that he did not go there for any "particular reason." On re-direct examination, Deputy McDonald said that he called Sergeant Mace because he was concerned "[f]or the safety of the public." On re-cross examination, Deputy McDonald admitted that the dispatcher called him that night at 7:02 p.m. and told him that Sergeant Kenneth Thompson needed him to come to the sheriff's department as soon as possible.

Sergeant Mace testified that he was Deputy McDonald's training officer and that he was at the sheriff's department working on a report when he received a call from Deputy

---

[1]Sergeant Mace was a deputy on the night of the Defendant's arrest.

McDonald. Sergeant Mace called Officer Deas of the Waynesboro Police Department to report the Defendant's suspicious driving; however, Officer Deas was unable to assist in apprehending the Defendant. Therefore, Sergeant Mace drove to the town square, where he saw the Defendant "roll through [a] stop sign." He followed the Defendant and turned on his lights to stop the Defendant. The Defendant stopped his car, and Sergeant Mace told him to drive to the nearby parking lot of an apartment complex. As he was parking, Sergeant Thompson arrived at the apartment complex and stopped to assist Sergeant Mace.

Sergeant Mace approached the Defendant and noticed that the Defendant's eyes were "bloodshot." He told the Defendant that he stopped him for "coasting through the stop sign" and that he had also received a call about the Defendant's driving. When the Defendant responded, Sergeant Mace noticed that the Defendant's speech was "very slurred." Sergeant Mace did not notice the smell of alcohol; therefore, he asked the Defendant if he was taking any prescription medications. The Defendant said that he had not taken any medications. Sergeant Mace eventually asked the Defendant to get out of his vehicle, and Sergeant Thompson searched the Defendant for weapons and found a bulge in his pocket. Upon further investigation, they found that the Defendant had approximately 10,000 dollars in "a big wad" in his pocket.

Eventually, the officers conducted several field sobriety tests, which were recorded. Portions of the videotape were played for the jury. Sergeant Mace stated that the Defendant did not keep his arms to his side while performing the one-legged stand test; that the Defendant touched his nose with the middle part of his index finger and was confused while performing the index-finger-to-nose test; and that the Defendant stepped ten times instead of nine and did not step heel-to-toe on several occasions while performing the nine-step walk and turn test. Sergeant Mace arrested the Defendant because he believed the Defendant was "impaired and a potential danger to the safety of the public."

After the Defendant was arrested, Sergeant Mace read the implied consent form to the Defendant. The Defendant refused to provide a blood sample and refused to sign the form. Sergeant Mace also searched the Defendant's car and found two pill bottles in the front console of the vehicle. One bottle was filled with Lortab, and the other bottle was filled with Penicillin. The label on the bottle of Lortab indicated that there should be 15 pills in the bottle, but there were only 8 pills in the bottle. When asked about the pills, the Defendant stated that he had been to the dentist at 2:00 p.m. that day and that the dentist prescribed the medication. The Defendant was stopped between four and five hours after the dental appointment.

On cross-examination, Sergeant Mace stated that he followed the Defendant for approximately one half a mile before he stopped him. He admitted that the Defendant was

able to move his vehicle to the apartment complex without incident. He also admitted that the Defendant told him that he had a head injury and that he was awarded the 10,000 dollars in a settlement agreement. He stated that the Defendant refused to consent to a search of his car. He admitted that when he had the Defendant perform the field sobriety tests, he had not found the pill bottles yet. However, he believed that the Defendant's "red eyes and slurred speech" indicated that he should conduct the field sobriety tests. He admitted that the Defendant's performance was adequate on the one legged stand test because he only lifted his arm once. However, the Defendant had to search for his nose two or three times, touched his nose with the middle part of his finger, and only touched his nose correctly two times while performing the index-finger-to-nose test. He admitted that he did not remember and did not write down how many milligrams were in the Lortab pills. He also admitted that the Defendant only swayed a "little bit" during the traffic stop and stated that the Defendant "wasn't drunk."

Sheriff Ric Wilson of the Wayne County Sheriff's office testified that he interrogated the Defendant on the night of the Defendant's arrest. He stated that after the Defendant waived his <u>Miranda</u> rights, the Defendant gave a statement that was later typewritten. The Defendant's statement was introduced into evidence.

In the statement, the Defendant said that he was not driving fast and that he was not under the influence of any drugs or intoxicants. The Defendant admitted that he had taken some pain medication sometime around 4:00 or 5:00 p.m. At first, the Defendant stated that he only took one Lortab pill but then stated that he took another pill later in the day. The Defendant said that he did not know what happened to the rest of the pills.

Sheriff Wilson testified that the Defendant "had a little bit of thick tongue when he was talking" and that the Defendant's speech was "sort of slurred." He believed that the Defendant's eyes were "redder" than they should have been and that the Defendant seemed confused. On cross-examination, Sheriff Wilson stated that he could not recall the exact strength of the Lortab pills.

ANALYSIS

I. Sufficiency

The Defendant contends that the evidence was insufficient to sustain his conviction when the videotape of the field sobriety tests belied the officer's assertions that the Defendant appeared intoxicated and performed poorly on the tests. The State responds that the evidence was sufficient to sustain the conviction.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The Defendant was convicted of DUI in violation Tennessee Code Annotated section 55-10-401. The statute states, in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
>> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or
>> (2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08%) or more.

Tenn. Code Ann. § 55-10-401(a).

In the instant case, Deputy McDonald informed Sergeant Mace that the Defendant was driving in excess of the speed limit and traveling in the wrong lane. When Sergeant Mace observed the Defendant, he saw the Defendant roll through a stop sign without coming to a

complete stop. Sergeant Mace testified that the Defendant had bloodshot eyes; that the Defendant's speech was "very slurred;" and that seven pills were missing from the bottle of Lortab that was prescribed that afternoon. Sheriff Wilson testified that the Defendant's eyes were "redder" than normal; that the Defendant "had a little bit of thick tongue when he was talking;" that the Defendant's speech was "sort of slurred;" that the Defendant seemed confused; and that the Defendant admitted taking two Lortab pills that afternoon.

We acknowledge that the Defendant performed relatively well on the field sobriety tests that were videotaped; however, the third test, the nine-step walk and turn test, was not captured on videotape. This court has held that in DUI cases, a police officer's testimony, by itself, is sufficient evidence to convict a defendant of driving under the influence. See State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993). Additionally, "[t]he evidence need only show . . . that [the Defendant] was under the influence of an intoxicant [or narcotic drug] at the time the offense occurred." State v. Lane, 673 S.W.2d 874, 876 (Tenn. Crim. App. 1983); see also Tenn. Code Ann. § 55-10-401(a)(1). Accordingly, we conclude that based upon the evidence presented in the form of testimony from Deputy McDonald, Sergeant Mace, and Sheriff Wilson, the evidence was sufficient to sustain the Defendant's conviction of driving under the influence of Lortab, a narcotic drug.

## II. Mistrial

The Defendant contends that the trial court erred in declining to grant a mistrial when the jury was given the Defendant's unredacted statement that referenced the marijuana plant found in his vehicle. The State notes that the trial court stated its reasoning for denying the Defendant's motion for a mistrial in the motion for new trial hearing and responds that because the transcript of the motion for new trial hearing was not included in the record on appeal, this issue should be waived. The State also responds that the trial court did not err in declining to grant a mistrial because there was no indication that the jury read or considered the erroneously admitted statement. The Defendant responds that this court should not waive the issue for failure to supplement the record but should consider this issue pursuant to the plain error doctrine.

When the jury retired to the jury room to deliberate, the trial court sent four exhibits with the jury. Included in the exhibits was the Defendant's unredacted statement to police that was filed for record-keeping purposes. In that statement, Sheriff Wilson questioned the Defendant about the marijuana found in his vehicle and asked the Defendant how long he had been growing marijuana. When the trial court realized that the Defendant's unredacted statement was sent back with the jury, the trial court retrieved the document and spoke with the jury foreman. The trial court asked the jury foreman if the jury had looked at the exhibits. In response, the jury foreman stated, "Briefly. Not everyone looked at all of them." The trial

court sent the jury back to the deliberation room, and defense counsel requested a mistrial. The State suggested that a curative instruction might be helpful, but the trial court and defense counsel agreed that a curative instruction would not be helpful. The trial court took the motion for a mistrial under advisement until the jury returned with a verdict. After the verdict was announced, defense counsel again moved for a mistrial. In response, the trial court stated, "I'm overruling that." Upon further discussion by the State and defense counsel, the trial court stated, "Let the appellate court decide that."

We first note that application of the plain error doctrine to this case is inappropriate. The trial court sent the inadmissible document back with the jury, and the Defendant moved for a mistrial as soon as the trial court discovered its error. The Defendant also raised the mistrial issue in his motion for new trial and raised the issue again on appeal. Additionally, all of the post-trial notices and motions were timely. Therefore, this issue has been properly preserved for our review. At issue is whether the absence of the transcript of the motion for new trial hearing hinders our review of whether the trial court abused its discretion in denying the motion for new trial.

The decision of whether to grant a mistrial is "within the sound discretion of the trial court," State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996), and the trial court's ruling will not be disturbed absent a finding of an abuse of discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990). The grant of a mistrial "is usually appropriate in a criminal case only where there is a 'manifest necessity'" for such action by the trial court. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996) (quoting Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977)). A mistrial may be declared when "some matter has occurred which would prevent an impartial verdict from being reached." Id. (citing Illinois v. Somerville, 410 U.S. 458, 464 (1973)). On appeal, the defendant bears the burden of establishing that a "manifest necessity" for granting a mistrial existed. Id.

Relative to the State's assertion that this issue is waived, we conclude that the evidence provided in the record is sufficient "to convey a fair, accurate and complete account of what transpired with respect to those issues which are the bases of appeal." Tenn. R. App. P. 24(b). We note that we have the same documents that were before the trial court when the trial court made its decision. Accordingly, we conclude that the record before us "provides a sufficient amount of information to determine" whether the trial court abused its discretion in declining to grant a mistrial. State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999).

In determining whether the trial court should have granted a mistrial, we must first determine whether the jurors were exposed to the inadmissible statement. See State v. Daniel Everett Meador, No. E2008-01710-CCA-R3-CD, 2009 WL 4738755, at *8 (Tenn. Crim. App. Dec. 11, 2009) (concluding that the defendant had established that a manifest necessity

for granting a mistrial existed and that plain error existed when the jury specifically asked about the challenged document during deliberations). When prompted by the trial court, the jury foreman indicated that not all of the jurors had viewed the four exhibits that were sent back with the jury. The jury foreman's assertion implied that at least some of the jurors had viewed the four exhibits that were sent back with the jury. It is important to note that the inadmissible portion of the Defendant's statement appeared on the front page of the exhibit. Thus, we conclude that at least some of the jurors viewed the inadmissible document.

Having determined that the jury was exposed to the inadmissible evidence, we must now determine whether the trial court abused its discretion in declining to grant a mistrial. In Meador, we concluded that the admission of the defendant's breathalyzer test results, which were previously deemed inadmissible, prevented an impartial verdict from being reached when the defendant was charged with DUI. Id. Here, the document at issue was the Defendant's unredacted statement that referenced the fact that he had been selling marijuana for three years and that he had a marijuana plant in his vehicle. While we have held that the proof was sufficient to support the verdict, the proof was not overwhelming. In addition, as the trial court remarked, the defendant "did very well" on the field sobriety tests that were videotaped. The proof at trial established that the Defendant's impairment resulted not from alcohol but from the Defendant's own prescription medication. Accordingly, we conclude that admission of the Defendant's inadmissible statement that referenced the Defendant's marijuana plant and his three-year established practice of growing and selling marijuana "prevent[ed] an impartial verdict from being reached." Arnold, 563 S.W.2d at 794. Therefore, when the error came to the trial court's attention, the Defendant's motion for a mistrial should have been granted, and the failure to grant the motion was an abuse of the trial court's discretion. See State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002); Adkins, 786 S.W.2d 642 at 644.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgments of the trial court are reversed. The case is remanded for a new trial.

_____
D. KELLY THOMAS, JR., JUDGE

-8-