# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 1, 2012

## STATE OF TENNESSEE v. CORNELIUS MULL

### Appeal from the Criminal Court for Shelby County
### No. 09-05418     Lee V. Coffee, Judge

### No. W2011-01218-CCA-R3-CD  -  Filed March 22, 2013

The Defendant, Cornelius Mull, contends (1) that the evidence presented at trial was insufficient to support his jury convictions for possession with intent to sell and possession with intent to deliver over twenty-six grams of cocaine, a Class B felony, and (2) that his sentence of twenty years was excessive. After reviewing the record and the applicable authorities, we affirm the judgment of the trial court, concluding that the evidence was sufficient to support the jury convictions and that the Defendant's sentence was not excessive.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Lauren Pasley-Ward (on appeal) and Edward Bronston (at trial), Memphis, Tennessee, for the Defendant, Cornelius Mull.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Kate Edmands, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The record reflects that the Defendant was indicted for knowingly possessing with the intent to sell over twenty-six grams of cocaine and knowingly possessing with the intent to deliver over twenty-six grams of cocaine, as alternate theories of the same offense. The Defendant's trial was held on October 25 through 28, 2010. The evidence presented at trial

revealed the facts as follows. On February 16, 2009, Officer Parz Boyce and Officer Meyers, both with the Memphis Police Department (MPD), were riding together when they received a call notifying them that shots had been fired at 3481 Hadley Street in Memphis, Tennessee. The officers responded to this call by proceeding to Hadley St., and they were the first officers to respond to the scene of the shooting. Upon their arrival, they spoke with an individual, who explained that her car had been shot. She said that the suspect was a black male named Teddy, who was driving a green Bonneville, and that he could be located at 1008 Railton Street. The victim also explained that Teddy was shooting at her because he believed that she had reported him to the police on a prior date. Officer Boyce relayed this information about the suspect to MPD Officer Veronica Carson, who had also responded to the "shots-fired" call, and he also broadcast this information to other officers.[1] Officer Carson and her partner Officer Jeremy White went to Railton St. to look for the suspect while Officer Boyce completed his report regarding the "shots-fired" at Hadley St.

Shortly after Officers Carson and White got into their car to proceed to Railton St., MPD Officer John M. Rainey arrived on the scene at Hadley St. After learning from Officer Boyce that Officers Carson and White were heading to an address to locate the suspect, he followed them in his squad car. Railton St. was located just around the corner from the scene of the "shots-fired" call. As the officers approached Railton St., they noticed that a green Honda was parked directly in front of the address, blocking the driveway, and it was the only car in the area. A black male walked down the driveway and got into the car on the passenger's side; there was another black male on the driver's side. The officers approached the car and yelled for the men to put their hands up. The driver complied immediately, but the passenger, who was later identified as the Defendant, did not comply and, instead, began reaching under his seat. Because they were responding to a "shots-fired" call and were pursuing the shooter, Officer White explained that they had a "heightened sense of alertness." The officers drew their guns and repeated their request for the Defendant to put his hands up, and the Defendant finally complied. Officer White removed the Defendant from the car and patted him down to ensure that he did not have any weapons. Officer White did not find any weapons but did find $293, $143 in one-dollar bills, rolled up in the Defendant's pocket that Officer White initially thought could have been the handle of a weapon. As Officer White walked the Defendant to the squad car to detain him, a clear baggie containing a white powder fell out of the Defendant's right pants leg. Officer White handcuffed the Defendant and placed him under arrest for possession of cocaine. Later, Officer White gave the cocaine to MPD Officer Charles Davidson, who transported it to the property room.

Officer Rainey had also arrested the driver, later identified as Brian McClain, and Officer Carson asked him to transport the Defendant to jail with Mr. McClain. Officer

---

[1] The radio transmission was broadcast in all police cars.

Rainey explained that he searched the Defendant again before transport and found a small baggie of white powder in the Defendant's front, left pants pocket. He also gave this evidence to Officer Davidson to take to the property room.

Tennessee Bureau of Investigation (TBI) Agent Shalandus Harris testified that the substance Officer White recovered from the Defendant tested positive for cocaine and that it weighed twenty-eight grams. Agent Harris could not identify the contents of the smaller bag of white powder recovered by Officer Rainey, but it tested negative for cocaine.

MPD Task Force Lieutenant Micheal McCord was qualified as an expert in narcotics and drug trafficking and distribution and was tendered as an expert witness on the issue of whether the Defendant possessed the cocaine with the intent to sell. He testified that the area in which the Defendant was arrested was a high drug trafficking area and that his "strike" unit had targeted this area in the past.[2] According to Lt. McCord, possession of over an ounce of cocaine is "definitely for redistribution." He explained that most users can not afford to buy a whole ounce at a time because it would cost about $3,000, approximately $100 per gram. Cocaine is typically sold in tenths of a gram, which Lt. McCord referred to as "hits." Lt. McCord explained that the average user will buy two to three "hits" at a time, which would cost approximately twenty to thirty dollars, and that heavy users will buy it by the gram for approximately $100. Lt. McCord testified that the "hits" are packaged in different ways, varying from dealer to dealer, and that one common way of packaging the "hits" is to place a tenth of a gram of cocaine in a dollar bill and fold it into a square. Lt. McCord testified that most of the people that he has arrested with twenty-eight grams of cocaine were selling the drugs.

When asked about the significance of the smaller baggie found on the Defendant that contained an unknown white powder, Lt. McCord explained that the bag contained "what you would call cut. This could be baby laxatives, aspirin - anything - anything that looks like cocaine." He further explained that most drug dealers will buy an ounce or more of cocaine and add the "cut" to the cocaine, referred to as "stepping on" or "cutting," because the added volume increases their profit. Lt. McCord stated that users will not add the "cut" to their own cocaine "because they are going to diminish their high if they cut the purity of the drugs." Lt. McCord testified that, given the facts involved in this case, it was his expert opinion that the Defendant possessed the cocaine with the intent to sell or deliver it.

The jury convicted the Defendant on both counts, and the trial court approved the verdict.

---

[2] Lt. McCord explained that he had previously supervised a unit of officers who were assigned to target or "strike" certain high-drug crime areas in Memphis, Tennessee.

The sentencing hearing was held on February 22, 2011. The Defendant and his mother testified at the hearing, and the State submitted the Defendant's presentence report. The Defendant's mother, Ernestine Mull, told the court that the Defendant was employed and attended school. She testified that he had two children and that he did not have a car. Ms. Mull also testified that she had seen tremendous changes in the Defendant since he was released from prison on the federal charges approximately four to five years ago.

The Defendant testified that he worked two jobs and did community service. The Defendant explained that the cocaine did not belong to him and that he was simply involved with the wrong people. He further explained that when the police approached the car that day, Mr. McClain threw the drugs at him, and he threw the drugs out of the door when Officer White ordered him out of the car. The Defendant insisted that the drugs never fell from his pants leg. The Defendant admitted that he was selling drugs when he was convicted of the federal charges but stated that he had been trying to turn his life around. He claimed that he was in the car with Mr. McClain, a known felon, that day to go get something to eat and that they were only on Railton St. to see a "Cutlass" that Mr. McClain said Teddy had for sale.

In issuing its findings, the trial court noted that it had considered the evidence from the trial and sentencing hearing, the principles of sentencing, the sentencing considerations, the Defendant's potential for rehabilitation, the certified judgments of the Defendant's prior convictions, statistical data, and the enhancement and mitigating factors. Based on the Defendant's three prior cocaine-related felony convictions in federal court, the trial court determined that the Defendant was a Range II, multiple offender, with a sentencing range of twelve to twenty years. The trial court found that four enhancement factors applied: (1) the defendant had a previous history of criminal convictions or behavior in addition to those necessary to establish the range, consisting of five cocaine-related felony convictions and some driving-related convictions; (8) the Defendant, before trial or sentencing, had failed to comply with the conditions of a sentence involving release into the community; (10) the Defendant had no hesitation about committing a crime when the risk to human life was high; and (13) the Defendant was on probation when he committed the felony in this case. See Tenn Code Ann. § 40-35-114. The trial court noted that it placed great weight on each of the aforementioned enhancement factors. The trial court also applied one mitigating factor: the Defendant attempted to establish himself as a legitimate employee, on which the court placed "slight weight." See Tenn Code Ann. § 40-35-113(13). The trial court sentenced the Defendant to serve the maximum on each count, twenty years, in the Department of Correction (DOC) and merged the convictions. The trial also imposed the minimum fine, $2,000.

The Defendant perfected a timely appeal.

## ANALYSIS

The Defendant contends that the evidence presented at trial was insufficient to support his jury convictions for possession with intent to sell and possession with intent to deliver over twenty-six grams of cocaine and that his convictions rest solely on the testimony of the arresting officers. He also contends that the trial court misapplied one of the four enhancement factors and that the twenty-year sentence imposed by the trial court was excessive. The State responds that the evidence was sufficient to support the Defendant's convictions and that the twenty-year sentence imposed by the trial court was proper regardless of whether this court finds that one of the enhancement factors was improperly applied. We agree with the State.

### A. Sufficiency of the Evidence

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor

of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

The Defendant was convicted, pursuant to Tennessee Code Annotated section 37-17-417(a)(4), of possessing cocaine with the intent to sell and possessing cocaine with the intent to deliver. The statute states, in relevant part, that

> (a) It is an offense for a defendant to knowingly:
>
> . . .
>
> (4) Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance.
>
> . . .
>
> (i) A violation of subsection (a) with respect to the following amounts of a controlled substance, or conspiracy to violate subsection (a) with respect to such amounts, is a Class B felony and, in addition, may be fined not more than two hundred thousand dollars ($200,000):
>
> . . . .
>
> (5) Twenty-six (26) grams or more of any substance containing cocaine.

Tenn. Code Ann. § 39-17-417(a)(4), (i)(5). Therefore, to convict the Defendant of Class B felony possession of cocaine, the State had to present evidence sufficient to prove beyond a reasonable doubt that the Defendant possessed in excess of twenty-six grams of cocaine and did so with the intent to either deliver or sell the cocaine.

In a light most favorable to the State, the following evidence was presented at the Defendant's trial: Officer White testified that he found the Defendant in possession of the cocaine at issue. Agent Harris testified that the white substance retrieved from the Defendant was, in fact, cocaine and that it weighed approximately twenty-eight grams. Lt. McCord testified as an expert in narcotics trafficking and distribution and explained that cocaine is typically sold in tenths of a gram for about $10 and that a gram of cocaine would cost approximately $100. He also testified that, in his experience, possession of over an ounce of cocaine is "definitely for redistribution." He further testified that the small bag of white powder that was found in the Defendant's pocket was a substance called "cut" that many drug dealers would add to the pure cocaine to increase their profits. Lt. McCord further testified that, in his expert opinion, the Defendant possessed the twenty-eight grams of

cocaine with the intent to sell or deliver it. Despite the Defendant's contention that his conviction was based solely on the testimony of the arresting officers, we note that the State also presented the testimony of Agent Harris and Lt. McCord and, more importantly, that there is no prohibition on a conviction being based solely on the testimony of the arresting officers. See State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993). Considered in a light most favorable to the State, the record reflects that the State presented sufficient evidence for a rational jury to conclude beyond a reasonable doubt that the Defendant was guilty of Class B felony possession of cocaine with intent to sell or deliver.

## B. Sentencing

The Defendant contends that the trial court improperly applied enhancement factor (10), that the Defendant participated in a crime in which the risk to human life was high, rendering the twenty-year sentence imposed by the trial court excessive. The State responds that the trial court relied on applicable law to support its application of enhancement factor (10) but that, alternatively, the sentence imposed is still not excessive because it is supported by the other three enhancement factors applied.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). To facilitate appellate review, "it is critical that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e)" and articulate in the record its reasons for imposing the specific sentence. See State v. Bise, 380 S.W.3d 682, 705 n.41 (Tenn. 2012).

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." Id. at 708. Currently, upon a challenge to the sentence imposed, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote

respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The 2005 amendments also rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by - but not bound by - any applicable enhancement factors when adjusting the length of a sentence. Bise, 380 S.W.3d at 706. In accordance with the broad discretion now afforded our trial court's sentencing decisions,

> misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

Id.

Although the Defendant argues that his twenty-year sentence is excessive, the sole error raised is that one enhancement factor, that the Defendant participated in a crime in which the risk to human life was high, was improperly applied because "the legislature has already considered the inherent nature of the various drugs in its setting of punishment." Although we agree that this enhancement factor was improperly applied, see State v. Keel, 882 S.W.2d 410, 420-22 (Tenn. Crim. App. 1994) (holding that a trial court is not warranted in using this factor to enhance a sentence involving a Schedule II controlled substance based solely on the "nature and circumstances" of the substance), it does not entitle the Defendant to relief. The record illustrates that the trial court considered all the sentencing factors and the relevant facts and circumstances of the case. As previously stated, the misapplication of an enhancement factor does not invalidate the sentence imposed by the trial court. Bise, 380 S.W.3d at 706. The trial court's "within-range" sentence is presumed reasonable unless the Defendant can show an abuse of discretion. Here, the Defendant does not challenge the applicability of the other three enhancement factors found by the trial court, and their application is supported by the record. Because the trial court complied with the Sentencing Act and the proffered reasons for imposing the sentence are supported by the record, we cannot conclude that the trial court abused its discretion by sentencing the Defendant to serve twenty years in the DOC, the maximum sentence allowed for a Range II, B felony conviction.

## CONCLUSION

Accordingly, the judgment of the trial court is affirmed.


_____
D. KELLY THOMAS, JR., JUDGE