# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs June 24, 2014

## STATE OF TENNESSEE v. MICHAEL ANTHONY SKETTINI

**Appeal from the Circuit Court for Blount County**
**Nos. C-19637 & C-18827     David R. Duggan, Judge**

---

**No. E2013-02780-CCA-R3-CD - Filed July 28, 2014**

---

The Defendant, Michael Anthony Skettini, appeals as of right from the Blount County Circuit Court's revocation of his probation and order of confinement for one year. The Defendant contends that the trial court abused its discretion in revoking his probation based upon the "limited evidence" of driving under the influence (DUI) presented at the revocation hearing and that a "lesser period of split confinement . . . would have been more reasonable" under the circumstances. Following our review, we affirm the trial court's revocation of the Defendant's probationary sentences and order of confinement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); and Mack Garner, District Public Defender (at hearing), for the appellant, Michael Anthony Skettini.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Mike Flynn, District Attorney General; and Clinton Fraizer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

On July 22, 2011, the Defendant was charged by criminal information with reckless endangerment, a Class E felony, occurring on July 10, 2007; and aggravated assault, a Class C felony, occurring on February 8, 2011. See Tenn. Code Ann. §§ 39-13-102, -103. Both charges included the use of a deadly weapon, to wit: an automobile. On July 10, 2007, the Defendant "was driving at a high rate of speed" and "struck another vehicle[,]" causing the

death of one passenger and injuring the other; this conduct formed the basis for the reckless endangerment charge. The charge for the February 8, 2011 aggravated assault offense named five victims. The victims advised the responding officer that the Defendant "attempted to hit them with his vehicle while they were walking on the sidewalk." According to the officer, "there were tire tracks where the Defendant jumped the curb, went over the sidewalk, went up an embankment, and then back down to the road."

The Defendant entered into a negotiated plea agreement the same day the criminal information was filed,[1] and the judgment of convictions were filed on July 25, 2011. Pursuant to the agreement terms, he pled guilty to reckless endangerment and one count of aggravated assault and, in exchange, received consecutive sentences totaling five years, at thirty percent release eligibility, with the sentences to be served on probation after service of six months in the county jail.

The first violation report was filed on February 27, 2012. Therein, the Defendant's probation officer averred that the Defendant failed to obey the law, being cited for driving on a revoked license on November 9, 2011, after curfew without permission. Another report was filed on March 26, 2012; again it was alleged that the Defendant failed to obey the law, this time as evidenced by his arrest for domestic assault and possession of a Schedule III controlled substance on March 7, 2012. It was also noted that the Defendant tested positive for marijuana on March 1, 2012, and signed an admission form to that effect. A probation violation warrant was issued, citing the March 7, 2012 charges as its basis. The Defendant, thereafter, admitted the violation.[2] The trial court partially revoked the Defendant's sentence by ordering him to serve ninety days' incarceration before returning to supervised probation.

Another probation violation report was filed on July 19, 2013. This time it was alleged that the Defendant violated the conditions of his sentence in the following respects: "Rule #2: Subject failed to obey the law as evidenced by his arrest for Driving Under the Influence on 7/09/13 in Blount County. Subject refused to perform field sobriety test and refused a chemical test after being read the Tennessee Implied Consent form."; "Rule #10: Subject failed to pay probation fees and owes $110.00."; and "Rule #11: Subject failed to pay court costs and owes $908.00." A warrant was issued citing these three violations, and a revocation hearing followed.

At the hearing, Alcoa Police Department Officer Arik Wilson testified that, on July 9, 2013, at 9:49 p.m., he stopped the vehicle being driven by the Defendant for disregarding

---

[1] The guilty plea transcript is not included in the record on appeal.

[2] The Defendant later pled guilty to the possession charge, and the domestic assault charge was dismissed.

a stop sign. When Officer Wilson approached the passenger's side of the car, he smelled "the odor of an alcoholic beverage coming off [the Defendant's] breath." The Defendant also had "slurred speech" and "glassy[,] bloodshot eyes" according to Officer Wilson. Officer Wilson requested the Defendant to step out of his vehicle, and when he complied, the Defendant "was unsteady on his feet[.]" Officer Wilson asked the Defendant how much he had to drink that evening, and the Defendant said that "he just had three shots of Old Timer's whiskey." The Defendant refused to perform any field sobriety tests. The Defendant, who was read the implied consent form, also refused to consent to any breath or blood tests. In Officer Wilson's opinion, who testified at length about experience with such matters, the Defendant was impaired that evening.

On cross-examination, Officer Wilson testified that Officer Doug Sparks assisted him with the Defendant's traffic stop and confirmed that his police car was equipped with monitoring equipment. Neither Officer Sparks nor the recording from Officer Wilson's car were presented as evidence at the revocation hearing.

Lester Burnette, employed with the Department of Correction and the Defendant's probation officer, detailed the Defendant's history of supervision beginning in July 2011. Following the Defendant's guilty plea, the Defendant "successfully maintained employment and was an exemplary employee." He also paid "fees and court costs every time he reported" according to Mr. Burnette. After the Defendant was cited for driving on a revoked license in November 2011, he was referred to an anger management course, which he successfully completed. Mr. Burnette stated that the Defendant tested positive for marijuana in March 2012 and signed an admission form. Mr. Burnette noted that the Defendant was found previously to be in violation of his probation and ordered to serve ninety days.

Mr. Burnette also testified that, "as of the date of the violation," the Defendant was still in arrears for probation fees and court costs. According to Mr. Burnette, the Defendant owed $908.00 in court costs. When Mr. Burnette learned of the Defendant's July 9, 2013 DUI arrest, Mr. Burnette pursued the second violation of the Defendant's probation. Mr. Burnette acknowledged that the Defendant reported this arrest to him.

The Defendant testified on his own behalf and acknowledged that his probation had previously been revoked for his driving on a revoked license charge. However, the Defendant stated that he had a valid driver's license and that the charge was not fully prosecuted. The Defendant also detailed his positive achievements while on probation—attending anger management classes, stopping smoking marijuana, maintaining employment, and reporting to his probation officer. The Defendant explained that he was making regular payments on his costs until "they changed the program[,]" requiring mailed

payments rather than money-order payments in office. He said that he "accidentally brought in a money order . . . [, s]o the next month [he] was going to try to catch up on everything."

The Defendant then gave his version of the DUI arrest. He admitted that he was driving that night, going to a local gas station to buy some cigarettes. The Defendant also acknowledged that he told Officer Wilson that he had consumed several shots of liquor that evening and that was in fact the truth. He explained, "I got off about 6:30. I did a shot at the house. I did a couple of shots at the house between 6:30 and 9:30. And then I went to the store." Due to what he described as "bad legs[,]" the Defendant was hesitant to perform any field sobriety tests. He did not want to take any breath or blood tests because he had taken "a shot right before [he] left the house" and was "afraid[,] that with it fresh on [his] breath[,] that [he] would fail" any tests.

He believed he could maintain employment if released. The Defendant also asserted that he could pass a drug test if given one. The Defendant pleaded, "I made a few bad choices and a few bad calls. And I'm trying to get my life together."

On cross-examination, the Defendant agreed that he suffered from substance abuse issues and that all of his previous crimes involved the use of a vehicle. The Defendant acknowledged that he pled guilty to reckless endangerment and that Marilyn Clark died as a result of the July 10, 2007 car crash. He also agreed that five victims were named in the aggravated assault case.

After finding that the Defendant had violated the terms of his probationary sentence, the trial court revoked that sentence and ordered him to serve one year followed by service on "enhanced probation." The Defendant's probationary period was also extended by one year, and he was granted credit for previous jail time. The Defendant perfected a timely appeal.

ANALYSIS

The Defendant contends that the trial court abused its discretion in revoking his probationary sentence, noting his positive achievements while on probation and that "[t]here was limited evidence on the question of whether [he] was under the influence of alcohol at the time of the DUI arrest." He submits that, under these circumstances, a "lesser period of split confinement[, like the one hundred and fifty days] suggested by the Defendant's counsel at the revocation hearing[,] would have been more reasonable." The State responds that there was "more than sufficient evidence" that the Defendant violated the terms of his probation by committing the DUI offense. Therefore, the State concludes that the trial court acted

within its discretion in revoking the Defendant's probation and ordering a split confinement sentence. We agree with the State.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). Upon finding by a preponderance of the evidence that a defendant has violated the conditions of his release, the trial court "shall have the right . . . to revoke the probation and suspension of sentence" and either "commence the execution of the judgment as originally entered" or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. § 40-35-311(e). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Furthermore, the decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

Criminal conduct that is the basis of pending charges may serve as the basis for a revocation of probation. State v. Andrew B. Edwards, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App. May 26, 2000). However, the trial court cannot rely solely on the mere fact of an arrest or an indictment. Id. (citing State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991)). Instead, the State must offer proof by a preponderance of the evidence showing that a defendant violated the law. See State v. Catherin Vaughn, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App. June 14, 2010) (noting that proof of a conviction is not necessary).

In rendering its decision to revoke the Defendant's sentence and to order a period of incarceration, the trial court concluded that the Defendant violated the terms of his probation "by failing to obey the law as evidenced by his arrest for driving under the influence on July 9, 2013, in Blount County." The trial court continued, "[The Defendant] failed to perform

field sobriety tests and refused a chemical test after being read the Tennessee Implied Consent form. The [c]ourt also believes that the State has carried its burden by a preponderance of the evidence." As another violation of probation, the trial court determined that the Defendant failed to pay probation fees and court costs as ordered. The court then stated that it was "also tak[ing] into consideration that this [was the Defendant's] second violation." The trial court then noted that the Defendant "ha[d] done some things well in terms of completing some of his treatment programs" and that the Defendant's "first violation was not based on something as serious as [the court] normally see[s] on these things." Taking all these factors into consideration, the court concluded that it wanted to get the Defendant's "attention" and was, therefore, imposing the "maximum split confinement[.]"

With respect to the DUI arrest, the Defendant's main argument is that the State provided only "limited evidence" surrounding the traffic stop. At the revocation hearing, defense counsel noted that the State failed to present Officer Sparks as a witness or the recording from Officer Wilson's police car. However, Officer Wilson described the circumstances surrounding the traffic stop and gave his opinion that the Defendant was impaired that evening. According to Officer Wilson, the Defendant smelled of alcohol, had bloodshot eyes, his speech was slurred, and once the Defendant exited the vehicle, he was unsteady on his feet. The Defendant admitted that he had consumed three shots of liquor that evening. Officer Wilson also testified that the Defendant refused to perform field sobriety tests or consent to any breath or blood tests following the stop. The Defendant again admitted to his behavior. This court has previously held that a police officer's testimony, by itself, is sufficient evidence to convict a defendant of DUI. See State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993) (stating that the State did not need more than the deputy's testimony to prove its DUI case).

Additionally, the trial court also determined that the Defendant was in violation of his probation for failing to pay court costs and probation fees. Mr. Burnette provided testimony to this effect at the revocation hearing. The Defendant focuses on the fact that he was only "somewhat behind" in his payments, and Mr. Burnette testified that he would not have filed a violation report for this failure alone. However, this does not change the fact that the Defendant was in arrears.

The trial court was within its discretion to determine that the Defendant violated the conditions of his probationary sentence by a preponderance of the evidence. The trial court further noted that this was the Defendant's second violation. This court has repeatedly held that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999); see also State v. Timothy

A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002).  It was within the trial court's authority to order the Defendant to serve his original sentence in confinement upon revoking the Defendant's probation.  See Tenn. Code Ann. §§ 40-35-310, -311(e); Mitchell, 810 S.W.2d at 735.  The trial court did not do so and instead granted the Defendant the largess of split confinement. We conclude that the trial court did not abuse its discretion in sentencing the Defendant to one-year split confinement following the revocation of his probation.

## CONCLUSION

In sum, we conclude that the trial court did not abuse its discretion by revoking the Defendant's probation and by ordering him to serve one year's incarceration.  Accordingly, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE